# FIRST NATIONAL BANK OF CHICAGO

## v.

# NORTHWESTERN NATIONAL BANK OF CHICAGO.

*Negotiable Instruments—Checks—Forgeries.*

1.　A bank is bound to know the signatures of its depositors.

2.　The indorser of negotiable paper guarantees the genuineness of the signatures of all preceding indorsements.

3.　The certifying of a check by a bank amounts to an acknowledgment of the genuineness of the signature of the maker, and that he had sufficient funds to his credit to cover the same, but it is not any certificate that the signature of the payee thereon was genuine.

4.　Where a bank, for the purpose of obtaining payment of a check upon another bank, indorses the same, it guarantees the genuineness of all preceding signatures, and it thereby becomes liable for genuineness of the signature purporting to be tha- of the maker.

[Opinion filed June 2, 1891.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Suit was brought by the appellee against the appellant upon five checks, purporting to be drawn by the Western Union Telephone Company upon the Northwestern National Bank. Four of these checks were made payable to the order of "F. P. Ross, Manager" and one was drawn, payable to the order of "C. H. Wilson, A. G., Supt."

These checks were received by appellant in the regular course of business, being deposited with it by Chapin & Gore, who were regular depositors with it. Appellant indorsed them: " Pay through Chicago Clearing House only to First National Bank," and they, being by the clearing house presented to appellee, were by it paid.

Some twenty days afterward it was discovered that the checks were forgeries; the signatures of the makers, The Telephone Co., and that of the payees, Wilson and Ross, being also forgeries. Thereupon the Northwestern brought suit against the First National Bank. A recovery was had and the defendant below prosecutes this appeal.

Messrs. Remy & Mann, for appellant.

Mr. Charles M. Sturges, for appellee.

Waterman, J. That the indorser of negotiable paper guarantees the genuineness of the signatures of all preceding indorsements, is undisputed. 2 Parsons on Notes and Bills, 588; Daniel on Negotiable Instruments, Sec. 1557; Bigelow on Estoppel.

The First National Bank by its indorsement guaranteed that all the preceding indorsements were genuine. But a bank is bound to know the signatures of its depositors, and when these checks were presented to appellee it was bound to know that the apparent signatures of the Telephone Company were forgeries.

642     Appellate Courts of Illinois.

Vol. 40.] First Nat. Bk. of Chicago v. N. W. Nat. Bk. of Chicago.

Notwithstanding this knowledge it paid the checks. Appellant therefore claims that although it has received the money upon this forged paper, appellee can not now deny that the signatures of the Telephone Company, or of the payees, were genuine.

If the signatures of the Telephone Company had been genuine, then, admittedly, appellant would have had no defense; if it has any now it is based entirely upon the fact of the forgery of the name of the maker. If appellant had lost anything by reason of the failure of appellee to at once discover the forgery or by its payment of the checks, the case would present a different aspect; but it has lost nothing by reason of anything that appellee has done.

It had in its hands some forged, worthless paper; it has obtained payment thereon; and when it pays back the money it so received it will be entitled to have restored to it the forged paper it parted with, and can then demand reimbursement from Chapin & Gore, who indorsed these checks to it.

Two of the checks were certified by appellee before they were transferred to Chapin & Gore; this, doubtless, was an acknowledgment of the genuineness of the signature of the maker, and that he had sufficient funds to his credit to cover these drafts; but it was not any certificate that the signatures of the payees thereon were genuine; that was a matter concerning which the bank had not presumptively any knowledge, or to which it made by the certification either representation or undertaking, and was a matter which whoever took these checks knew he might be required to guarantee before he could obtain payment thereon.

The recent case of Vagleino v. Bank of England, Law Reports, 22 Queen's Bench Division, 103, and the same case upon appeal in Vol. 23, 243, is in many respects similar to this, being an action upon bills of exchange, the names of the drawer and payees being forgeries, which had been paid by the bank after the genuine acceptance of the drawee had been placed thereon. The forgeries amounted to the sum of £71,500. The conclusion reached was that the acceptor, Vagleino, could not be charged with payment made by the bank

upon forged signatures of payees who were, as in the case at bar, real persons; that the acceptor was bound to know the signature of the drawer, and by his acceptance was estopped to deny it, but the bank as purchaser of the bills could charge them to Vagleino only upon proof of the genuineness of the signatures of the payees.

The judgment of the court below is affirmed.

*Judgment affirmed.*