## The National Council of the Knights & Ladies of Security v. The Hibernian Banking Association.

### Gen. No. 13,499.

1. DEMURRER—*what waives error of court, in sustaining.* Asking leave to amend a declaration waives any error in the ruling of the court in sustaining a demurrer thereto.

2. OYER—*of what instruments may be craved.* Under the statute

in this state, *oyer* may be craved as· well of those instruments not under seal as of those instruments which are under seal.

3.· OYER—*effect of granting of*. *Oyer* being granted and the instrument being read in obedience to that order, the legal effect is to make the instrument a part of the preceding pleading, with like force and effect as if profert had been made of it by the plaintiff in the first instance.

4. NEGOTIABLE INSTRUMENTS—*when not assignable so as to enable maintenance of suit in name of assignee*. The rule governing negotiable instruments, to make them negotiable under our statute or at common law, is that the instrument, draft, bill of exchange or promissory note must be payable unconditionally, and that any condition attached to payment destroys negotiability, and an assignment of an instrument so burdened does not vest title in the assignee so as to enable such assignee to maintain an action in his own name.

5. NEGOTIABLE INSTRUMENTS—*what not strictly, so-called*. A so-called draft, payable "on presentation of Certificate No. 32,004, issued by Knights and Ladies of Security to James Kane, properly released," is not a negotiable instrument assignable under the statute, which will authorize suit in the name of the assignee.

6. FORGERY—*duty to guard against*. The duty to guard against forgery rests in the first instance upon the drawee of a draft.

7. FORGERY—*upon whom loss resultant from, should fall*. In cases involving a forgery, the loss must be borne by the party through whose means or· negligence the fraud was made successful.

8. FORGERY—*when bank not liable for loss resulting from*. A bank receiving a draft for collection is not liable, where it turns over the proceeds of such draft to its customer, even though the indorsement which made the collection possible was a forgery.

Assumpsit. Error to the ·Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed November 11, 1907.

**Statement by the Court.** The action here is *assumpsit,* brought by plaintiff in error against defendant in error upon its alleged liability as a guarantor of the genuineness of the signature of· Frank Kane upon the following instrument, of which *oyer* was craved on the ground of variance between the instrument sued on and the ·cause of action set up in the declaration, and thereupon the same was read to defendant with its indorsements in the words and figures as follows, viz:

"NATIONAL COUNCIL , No. 466
KNIGHTS AND LADIES OF SECURITY.

TOPEKA, KAN., July 15, 1899.
$2,850.75.

On presentation of Certificate No. 32004 issued by Knights and Ladies of Security to James Kane properly released, pay to the order of Frank Kane Twenty-eight hundred fifty and 75/100 dollars.

To

W. M. FORBES,              W. B. KIRKPATRICK,
   National Treasurer,        National President.
   Topeka, Kansas.

                           J. M. WALLACE,
                              National Secretary.

Payable at Central National
   Bank of Topeka."

Indorsed:

"FRANK KANE,
91680
Pay to the order of
THE FIRST NATIONAL BANK
HIBERNIAN BANKING ASS'N
Savings Department
Chicago.
HENRY B. CLARKE, V. Pres.
Paid
July 21, 1899.
FIRST NATIONAL BANK,
Topeka, Kansas.
Pd.
CENTRAL NATIONAL BANK,
Topeka, Kansas."

To the original declaration a demurrer was sustained. Plaintiff then took leave to file an amended declaration, to which, when filed, defendant interposed a general and special demurrer, which being sustained, plaintiff by leave of court filed on April 24, 1903, a second amended declaration, to which defendant again interposed a general and special demurrer, which, on

hearing November 3, 1906, the court sustained and dismissed the suit at plaintiff's cost.

The last amended declaration consists of four counts. The two special counts are the only ones material to our decision under the errors assigned upon the record. By the third count it is averred that plaintiff is a fraternal benefit association, with its main office at Topeka, Kansas; that by means of false representations, W. M. Regent and others, who had conspired to defraud plaintiff, procured the issuance of a benefit certificate on the life of James Kane for the benefit of his brother, Frank Kane; that James Kane and Frank Kane were wholly without knowledge of the issuance of that beneficiary certificate, or of the draft issued on it; that it was thereafter falsely represented to the plaintiff that James Kane was dead; that Regent and others, by means of the false representation of James Kane's death, procured the issuance to Frank Kane of the instrument sued upon, and procured its delivery to one of the conspirators, and that the person who so came into possession of that instrument forged the name of Frank Kane thereon, and put it in the Hibernian Bank of defendant for collection, and that it was duly collected and paid to such person; that the conspirators aforesaid procured a release on the reverse side of the certificate issued to Frank Kane to be forged, which certificate they forwarded by mail to the plaintiff, and that said certificate so released was received by plaintiff at the same time as the instrument sued on, and that plaintiff, relying on the guarantee of the defendant bank as to the genuineness of the indorsements on the same and the genuineness of the signature of Kane to the release on the certificate, paid the instrument called a draft.

The fourth count charges that plaintiff drew its draft directed to its national treasurer, setting forth the draft *in haec verba;* that said draft was fraudulently taken from the possession of plaintiff by a person

residing in Chicago, unknown to plaintiff, and that such person forged the indorsement of the name of Frank Kane on the back of the same, and delivered the draft to the defendant bank, and that the bank, without requiring the identification of the person impersonating said Frank Kane, and without presentation to the bank of benefit certificate number 32004 on the life of James Kane, properly released, forwarded the draft for collection, which plaintiff paid; and that by its indorsement on the draft the bank warranted the genuineness of Frank Kane's signature. That the person who forged the indorsement of Frank Kane upon the draft also forged his name upon the reverse of the benefit certificate properly made out, and that such certificate was mailed to plaintiff, and it was in its possession when it paid the forged draft. These counts both aver that on discovering the signatures to be forgeries plaintiff immediately notified defendant and demanded repayment of the money.

To this amended declaration defendant filed a general and special demurrer, which, among other things, craved *oyer* of the draft, and in the demurrer set out the draft as read to it, and charged that plaintiff cannot maintain the action in its own name upon the instrument sued upon. Ten assignments of error appear upon the record, but those material for our consideration in determining the essential questions here involved are confined to the third, fifth, sixth, ninth and tenth assignments, which are to the effect that error was committed in sustaining and not overruling the demurrer to the amended declaration of April 24, 1903, in allowing petition craving *oyer* of the instrument sued on, in dismissing the suit and entering judgment for costs, and in not ordering defendant to plead to the last amended declaration.

A. W. FULTON, for plaintiff in error.

GRAHAM H. HARRIS, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff, on the demurrers of defendant being sustained to the original and first amended declaration, by asking leave to and by filing a first and second amended declaration in legal intendment acknowledged the insufficiency of these declarations, so that whether or not the court erred in its rulings on the two demurrers first interposed, is beside the question here presented for our review, which must be limited to the rulings of the trial court on the demurrers to the amended declaration filed April 24, 1903, and our decision here will be so circumscribed.

We do not think the court committed error in allowing the instrument sued upon to be read to defendant in accord with the demand of *oyer* craved by it, or that the proceeding in relation to the craving of *oyer* was not in substantial accord with legal precedent. By the common law it is true that *oyer* was confined to those instruments which were under seal, but our statute has enlarged the common law rule in this regard and extended it to instruments sued upon not under seal. As said by the court in Lester v. The People, 150 Ill. 408: "At common law, in suits upon sealed instruments, of which it was necessary to make profert, the defendant might demand *oyer,* and thereby have an inspection of the instrument sued upon. This was limited to contracts or other instruments under seal and technically known as deeds. By section 20, chapter 110, of our statute relating to practice, this rule is extended to all instruments declared on, whether under seal or not. It reads: 'It shall not be necessary in any pleading to make profert of the instrument alleged; but in any action or defense upon an instrument in writing, whether under seal or not, if the same is not lost or destroyed, the opposite party may have *oyer* thereof, and proceed thereon in the same manner as if profert had been properly made according to the common law.' And it was held under

this statute that the court might compel the production of the original instrument sued on. Mason v. Buckmaster, Beecher's Breese, 27."

*Oyer* being granted and the instrument being read in obedience to that order, the legal effect was to make the instrument a part of the preceding pleading—which in this case was the amended declaration secondly filed—with like force and effect as if profert had been made of it by plaintiff in the first instance. Thus it was held in Matthews v. Storms, 72 Ill. 316, in the following language: "The tenor of the bond as it appears upon *oyer* is considered as forming a part of the precedent pleading, and it was competent for appellants to avail themselves of any defect apparent upon the face of the bond, or variance between its terms and the allegation in the declaration after *oyer* by demurrer. 1 Chit. Pleading, 466, 468; Taylor et al. v. Kennedy, Breese 91." The instrument of which *oyer* was craved is not set up as inducement merely, but forms the cause of action upon which a right of recovery is charged in the pleading. The obligations of the parties to this review must be measured and construed by legal interpretation of the instrument read on *oyer* craved and the material averments of the declaration of April 24, 1903, affecting it. Such are the legal questions projected by the demurrer interposed.

The argument of the learned counsel for plaintiff in error, while able and instructive, lends but little aid to the court in its solution of the questions involved in this review, because it is apparent that such argument is founded upon a misconception of the premises, the obligation of the parties and their relation to each other in virtue of the instrument sued upon. This misconception primarily arises from the assumption that the so-called draft sued upon is a negotiable instrument and assignable under our statutes, so that plaintiff may maintain an action thereon in its own name, and that the liability and responsi-

bility of defendant is that of a guarantor of the genuineness of the preceding signatures and indorsements.

The rule governing negotiable instruments, to make them assignable under our statute or at common law, is that the instrument, draft, bill of exchange or promissory note must be payable unconditionally, and that any condition attached to payment destroys negotiability, and an assignment of an instrument so burdened does not vest title in the assignee so as to enable such assignee to maintain an action in his own name. Kingsbury v. Wall, 68 Ill. 311. Daniels on Negotiable Instruments states the rule thus, vol. 1, p. 34: "The instrument must be payable unconditionally and at all events in order to be negotiable. If the order or promise be payable, provided terms mentioned are complied with, it is not a bill or note, and likewise if payable provided a certain act be done."

The instrument sued upon is payable "on presentation of Certificate No. 32,004, issued by Knights and Ladies of Security to James Kane, properly released." This condition clearly takes it out of the domain of a commercial negotiable instrument. Van Zandt v. Hopkins, 151 Ill. 248.

We find no well considered case holding to a contrary doctrine, nor any rule varying from this by any of the text writers. The authorities are numerous and uniform, and further citation from them unnecessary. Aside from the rule heretofore discussed, and for the time being waiving its force, effect and application, we will look into the case made by the last declaration before us, and the liability of the parties under it. The plaintiff is a corporation chartered under an Act of the Federal Congress as a fraternal beneficiary society, empowered, among other things, to issue certificates of insurance upon the lives of its members. Its principal office was at Topeka, Kansas. It charges that one Dr. N. M. Regent, with other persons named and unknown, conspired to defraud plaint-

iff and that they did, by fraudulent means, induce plaintiff to issue the certificate named in the instrument sued upon, insuring the life of James Kane in favor of his brother, Frank Kane, the Kanes having nothing to do with the conspiracy. Whether the Kanes, or either of them, were real or fictitious persons, does not appear. That the conspirators falsely represented to plaintiff that James Kane was dead, and plaintiff sent the instrument sued upon to the secretary of the subordinate lodge at Chicago to be delivered to Frank Kane, the beneficiary; that said secretary delivered the documents to some one whom it is alleged personated Frank Kane; that such person took the instrument to defendant, indorsing the name of Frank Kane thereon, and left it for collection. By the terms of this instrument it was to be paid only upon the surrender of the benefit certificate properly released at the office of plaintiff in Topeka, Kansas. Defendant thereupon indorsed the draft left with it and sent it to its correspondent at Topeka, the First National Bank. Defendant had nothing to do with the certificate; it was not left with it, but reached plaintiff at Topeka before payment of the so-called draft. It is alleged that the name of Frank Kane was forged upon the certificate. The First National Bank of Topeka presented the draft to the Central National Bank of Topeka, mentioned in it, which in turn presented it to the treasurer of plaintiff, and plaintiff, with the certificate and release in its possession, paid the money called for by the draft to the Central National Bank, which in turn paid the same over to the First National Bank, which remitted it to defendant. Defendant thereupon paid the person from whom it received the draft for collection. When plaintiff discovered what it claims were forged signatures and indorsements of Frank Kane on the draft and certificate, it notified defendant, demanded a return of the money paid, and upon defendant's refusal to comply with such demand brought this suit. Plaintiff now

contends that defendant was a guarantor of the genuineness of the signature of Frank Kane upon the draft. Under the facts alleged in the declaration it is clear that the validity of the indorsements was a matter which alone concerned plaintiff. The draft was payable upon the surrender, properly released, of the certificate, and it could not be properly released unless it was executed by Frank Kane. The defendant bank, under the terms of the draft itself, was absolved from any responsibility to see to the genuineness of the indorsement of Frank Kane on the draft, and had nothing whatever to do with the certificate. It received the draft for collection only, and rested, as it had a perfect right to do, upon the action of plaintiff in seeing to it that the draft and release were indorsed and executed in a manner satisfactory to it before paying the draft. The payment of the draft by plaintiff was a sufficient authority to defendant justifying it in paying the proceeds of the collection to the person entrusting the draft to it for the purpose of collection, irrespective of whether such person was in fact Frank Kane or some other person. The duty of guarding against forgeries in the first instance at least rested with plaintiff, upon whom the draft was drawn and who paid it charged with full knowledge of the identity of the payee. Plaintiff had a legal right to refuse to pay the draft until satisfied of the genuineness of the indorsement of the draft and the execution of the release by Frank Kane. Had defendant anticipated payment of the draft by plaintiff by paying it to the person leaving it for collection, it would have done so at the risk of plaintiff's repudiating its liability for forgery of the indorsement of the name of Frank Kane, the payee. The fact of payment by plaintiff was in itself a sufficient identification of the payee for the purpose of defendant's part in the transaction. Defendant had a right to assume plaintiff had knowledge of Kane and his signature, for did not the whole transaction emanate from it? The certificate was

originally issued by it. It had been satisfied as to the death claim made in virtue of it; had settled the amount due and payable on the claim made under the certificate, and had drawn its draft in discharge of its liability thereunder. To all of these matters, in the very nature of things, defendant was a stranger.

It may be that plaintiff had been deceived and defrauded in the whole transaction, from its inception to the payment of the draft, but that surely is no reason why an innocent party should be made to suffer when neither, in fact nor in law, did it have, or was it chargeable with knowledge of any of the illegal methods by which the deceit was practiced or the fraud perpetrated. Plaintiff is concluded by its own citation of authority from fastening a liability upon defendant, for it is the law that in cases involving a forgery the loss must be borne by the party through whose means or negligence the fraud was made successful. First Nat'l Bank v. N. W. Nat'l Bank, 152 Ill. 296 and 40 Ill. App. 640; Armour v. Green County State Bank, 50 Circuit Court of Appeals, 399.

The whole fraudulent scheme here resulted from the negligence of plaintiff, from its inception to its *denouement,* for which defendant is in no way to blame, nor is it liable by reason of its part in paying the money after honor and liquidation of the draft by plaintiff. Under authority *supra* plaintiff was bound to know the signature of the payee in the draft drawn on itself.

There is no averment in the declaration that Frank Kane is in existence, and for aught that appears to the contrary he may be a fictitious person. If such were the fact, payment of the draft to a person by an assumed name would not be payment upon a forged indorsement. The distinction between real and fictitious persons is tersely stated in Tolman v. Am. Nat. Bk., 22 R. I. 462. The court say *in arguendo* referring to cases previously cited: ''These cases lose sight of the distinction between real and fictitious persons.

In the latter cases there is nobody to inquire about; no one, in fact, misrepresented; no one in the mind of one party other than the person with whom he is dealing. In the case of a real person, however, one party, having him in mind, satisfies himself about the responsibility of such party and supposes that he is dealing not with the person who is in fact before him, but with one whom he has in mind and whom the one before him falsely personates.''

By paying the draft the plaintiff in effect said to defendant, the indorsements of payee and beneficiary in the certificate are all right; and defendant, so far as plaintiff is concerned, had the right to pay the amount to the person who delivered the draft to it for collection as a fictitious person without further inquiry.

Hoge v. First Nat. Bank, 18 Ill. App. 501, is well illustrative of this principle. The court say: ''The question in the case at bar was not strictly whether a forgery had been committed, but whether the name G. Rudelius had been indorsed upon the checks by the person to whose order by that name the checks were made. Upon this the burden was upon the bank to show that the checks had not been so indorsed.''

It cannot be assumed from any material fact alleged in the declaration that the name of Frank Kane upon the back of the draft is a forgery. The money paid by plaintiff on the indorsement of the person who delivered the draft to defendant was sufficient to justify defendant, after receipt of the amount of the draft from plaintiff, to pay it to the person from whom it had received it for collection.

No right of action against the defendant is disclosed by the declaration in the record, and the judgment of the Circuit Court is affirmed.

*Affirmed.*