## Maude Bamber Bergman, Appellee, v. Avenue State Bank, Appellant.

### Gen. No. 38,288.

Opinion

filed April 7, 1936. Rehearing denied April 23, 1936.

HERRICK, VETTE & PEREGRINE, of Chicago, for appellant.

HARRIS F. WILLIAMS and SYDNEY L: BLANKSTEIN, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Defendant appeals from a judgment rendered in favor of plaintiff for $973.35 and interest. There is substantially no dispute as to the following facts:

Norris & Kenly, a stock and bond brokerage firm, in payment for some stock standing in the name of William E. Bache, which one Sutherland had brought to them for sale for the account of Bache, issued and delivered to Sutherland a check for $973.35, drawn on Guaranty Trust Co. of New York, bearing date November 29, 1930, and payable to the order of William E. Bache. Bache died September 29, 1930, but Norris & Kenly had no knowledge of his death when the check was issued.

The check was brought to Harry A. Bergman, plaintiff's husband, by one S. M. McCormick, who resided at the hotel where Bergman was employed as clerk. The check bore an indorsement "William E. Bache," and McCormick, on delivering the check to Bergman, also indorsed it in blank, with the understanding that Bergman would put the check through his wife's account for collection and out of the proceeds retain $250 which McCormick owed him and turn the balance over to McCormick.

Plaintiff, a depositor in defendant bank, indorsed the check and delivered it to defendant December 1, 1930, for collection and credit to her account, and asked to be advised when it had cleared in order that she might draw against it. Defendant bank indorsed and forwarded the check to Continental Illinois Bank & Trust Company, its collecting agent, for collection, and was credited therewith. The Continental Bank indorsed and forwarded the check to Chase National Bank, in New York, for collection and credit to its account, and December 4, 1930, the Chase Bank received payment from the drawee, Guaranty Trust Co. of New York, through the clearing house, and credited the Continental Bank with the proceeds.

December 5, 1930, plaintiff was advised by defendant bank that her check had cleared and that she could draw against it, but the bank was not informed that plaintiff proposed to pay the proceeds or any part thereof to McCormick. On the same day plaintiff, by several checks, withdrew all but $250 of the proceeds of the $973.35 check, and turned over to McCormick the amounts so withdrawn, some by check and some in cash. Thereafter McCormick disappeared.

December 13, 1930, Egbert Robertson, attorney for Norris & Kenly, notified defendant bank that the indorsement of the payee was a forgery, and on the same day defendant, and also Mr. Robertson, so notified plaintiff. Norris & Kenly demanded that the drawee, Guaranty Trust Co., recredit their account to the extent of the amount paid Bergman on the check, Guaranty Trust Co. demanded that Chase National Bank reimburse it and Chase National Bank demanded reimbursement from the Continental Bank, which in turn demanded reimbursement from the defendant bank, the check being returned in each instance. Thereafter the defendant bank demanded reimbursement from plaintiff, and on January 15, 1931, charged the amount against plaintiff's account and shortly thereafter surrendered the check to her.

Prior to January 14, 1931, defendant bank held plaintiff's note for $300 and certain stock as collateral thereto. January 13, 1931, the bank wrote plaintiff that unless settlement was made the stock would be sold and her account charged. Plaintiff thereupon called at the bank and authorized sale of the stock. Plaintiff then knew of the demand by the Continental Bank for reimbursement from defendant bank. After selling the stock and charging plaintiff's account, defendant reimbursed the Continental Bank. Plaintiff continued to carry her account with defendant bank until November, 1931. Monthly statements and vouchers were

given her, for which receipts were taken with an agreement on her part to notify the bank of any error or irregularity within 10 days. No written notice was given by plaintiff, although she says she objected verbally, but defendant bank contends that no such objection was made. September 17, 1934, plaintiff filed suit, claiming that defendant, by making the charge against her account, converted her money. The court rendered judgment in plaintiff's favor for $973.35, from which defendant appeals.

It must be conceded that William E. Bache, the payee named in the check, had been dead for some time when the check was issued. Under section 1 of the Negotiable Instruments Act (Illinois State Bar Stats. 1935, ch. 98, ¶ 21) an instrument payable in money, in order to be negotiable, "must be payable to the order of a specified person or to bearer," and a "specified person," in contemplation of law, must be an existing person capable of indorsing the instrument and of being a party to a contract. "Paper cannot be made payable to a dead man." (8 Corpus Juris 172.) Therefore, when an instrument is made payable to one not in existence the instrument is void and no one can acquire any rights thereunder. It was so held in *United States v. First Nat. Bank of Coffeyville*, 82 Fed. 410 (Kansas). In that case a pension check to Mary L. Beard was issued after her death. A grandson forged her indorsement, and after indorsing the check himself deposited it with the defendant bank, withdrawing part of the proceeds. The bank sent the check to another bank for collection, and through various collection banks it was finally presented to the government and the proceeds were remitted through collection channels to the bank of deposit. Some two years later the forgery of the payee's indorsement was discovered, and the United States instituted suit against defendant bank. The court allowed recovery, saying (pp. 411, 412):

"The issuance of the check to said Mary L. Beard after she was dead was an act utterly void, and the check itself was absolutely void, and no act of any one could breathe into it the breath of life, or make it of any value whatever. When the defendant bank took the check . . . it devolved on it to know who was the legal holder . . . and it paid the money out at its own risk, and peril. . . . The loss sustained is by reason of its own neglect in paying the check. It has received from the government . . . . the amount demanded in this suit and there is no reason in law or equity why it should not be held responsible and reimburse the government in the amount paid out." To the same effect was *Wayman v. Torreyson,* 4 Nev. 124. Under both of these decisions the instrument was held to be absolutely void. It would logically follow that no one can acquire any rights under a void instrument, and, having procured money without right, plaintiff in the instant case was liable to refund it.

Plaintiff takes the position, however, that after payment of the check by the drawee bank to the defendant, and by defendant to plaintiff, who in turn paid it out to a third person, the drawee bank was estopped to recover from defendant, and defendant bank was in turn estopped to recover from plaintiff. Several cases are cited to sustain this position. The first of these is *National Council of the Knights & Ladies of Security v. Hibernian Banking Ass'n,* 137 Ill. App. 175, wherein plaintiff drew a death benefit draft to its own treasurer, payable "on presentation of certificate No. 32004 . . . to James Kane, properly released." Kane, who was named in the draft as payee, was in fact one Regent, who by fraudulent means had induced plaintiff to issue a certificate insuring the life of James Kane, his alleged brother, and naming Frank Kane beneficiary. Thereafter Regent made proof of the death of James Kane and plaintiff issued the draft to Regent,

believing he was Frank Kane. The defendant indorsed the draft and sent it to its correspondent, the First National Bank at Topeka, which presented it to the Central National Bank of Topeka, the drawee bank, which in turn presented it to the plaintiff, who paid it to the drawee bank, which in turn paid it to the First National Bank, which remitted it to the defendant collecting bank and the defendant collecting bank thereupon paid Regent, the person from whom it received the draft for collection. The maker sued the collecting bank and was allowed to recover, the court holding that before paying the draft it was its duty to satisfy itself as to the authenticity of all signatures.

In *Bank of Williamson v. McDowell County Bank,* 66 W. Va. 545, another case cited by plaintiff, the drawee bank had paid the check to the collecting bank, who thereupon paid the proceeds to its depositor, the plaintiff. The court held that the drawee "plainly should have been estopped to recover because of causing the collection bank to change its position by its (drawee's) act."

In commenting upon *Bank of Montreal v. Rex,* 38 Canada S. C. 258, a note in 12 A. L. R. 1107 contains the following:

"Since the bank was merely collecting agent and did not pay over the money (to its depositor) until it had received it (from drawee) the drawee was estopped to reclaim the money from it (the collecting bank). . . ."

(p. 1111) "Where the money is paid to a bank which took the paper for collection and paid over the money only after receiving it from the drawee, the drawee cannot recover back the money so paid, although the collecting bank had endorsed it . . . *Commercial & Savings Bank Co. v. Citizens National Bank* (Ind. App.), 120 N. E. 670. . . . In *Pennington County Bank v. First State Bank,* 110 Minn. 263, where the

check was forwarded for collection, with a request for advice as to whether or not it was honored, and payment made by the forwarding bank only after notification that it was good, the drawee was denied recovery. . . ."

Another case cited by plaintiff is *Citizens' Nat. Bank of Odessa v. San Angelo Nat. Bank* (Tex. Civ. App.), 19 S. W. (2d) 388, from which plaintiff quotes the following excerpt:

"Where bank endorsed forged check 'previous endorsements guaranteed' for the purpose of sending it through regular banking channels for collection, the drawee bank, which received and paid the check in due course of business and did not discover the forgery for 25 days after payment, had the burden of alleging and proving that the collecting bank had not paid out the money to endorsers before it received notice of the forgery."

In substantially all the cases relied on by plaintiff it appears that the original signature of the maker was forged, and not the indorsement as in the instant case. It is a well established rule that if a bank pays a check purporting to be drawn on it by its depositor, but on which the maker's signature is a forgery, the bank must stand the loss and cannot look to prior holders for reimbursement. This rule is based on the presumed negligence of the drawee in failing to meet its obligation to know the signature of its correspondent, and that if the drawee on presentment of a check pronounces it valid, and pays it, it is a payment in neglect of the duty which the law places on the bank, and it must suffer the result of its negligence. In the case of a forged indorsement, however, the drawee bank has no means of checking or knowing the validity of indorsements by persons who are strangers to it, and therefore, if after payment it develops that there was a forged *indorsement,* the drawee bank has a right to

look to the one to whom payment was made or to the indorsers after the forged one, for reimbursement. In *Bank of Williamson v. McDowell County Bank,* 66 W. Va. 545, previously cited, the opinion is not based on estoppel by reason of the changed position of the collecting bank through having parted with the proceeds. The actual holding in that case is that a drawee bank which pays a check on which its depositor's signature is forged as maker cannot recover from the collecting bank, even though the latter may have been guilty of negligence in taking the check without proper inquiry. *Bank of Montreal v. Rex,* 38 Canada S. C. 258, also previously cited, involved checks on which the makers' signatures were forgeries, and it was held that having paid the checks the drawee could not look to the collecting bank unless the collecting bank still had the funds. The quotation from 12 A. L. R. does not disclose whether the forgery was that of the makers' signatures or of an indorsement, but an examination of *Commercial & Savings Bank Co. v. Citizens' Nat. Bank* (Ind. App.), 120 N. E. 670, therein discussed, shows that the maker's signature and indorsement were forged and that the drawee bank therefore could not recover, since it was bound by the approval of its depositor's signature. *Citizens' Nat. Bank of Odessa v. San Angelo Nat. Bank, supra,* also involved a forged *original signature,* and not an indorsement. The same is true of *First State Bank & Trust Co. of Canton v. First Nat. Bank of Canton,* 234 Ill. App. 39, cited in plaintiff's brief. We think these citations are not applicable to the situation before us, for the following reasons:

Ordinarily a bank is acquainted only with its own depositors, and it should not be held to know or have any means of knowing makers of checks on other banks or indorsers prior to its depositor, either as to their signatures or their financial stability. On the other hand, one who takes a check presumably knows, or has the means of knowing, the person from whom he takes,

and if he is in doubt as to the identity, signature or financial responsibility of such person, he may refuse to accept the instrument. A bank in the exercise of proper precautions may assume responsibility for verification of signatures of its depositors, but it cannot in addition thereto be called on to assume responsibility with respect to acts of outside parties. Knowing its depositor, a bank can with reasonable safety accept for deposit, and give credit for, a check drawn by an unknown person and containing unverified indorsements, for the bank can go back to the depositor in case the item should prove of no value, the depositor and prior holders having in turn the right to look to their successive transferors until the infirmity is reached, thereby fixing the loss where it should be as between the parties—on the one who took the check without proper knowledge of the one from whom it is accepted. These conclusions are sustained by abundant authority.

Section 23 of the Negotiable Instruments Law (Illinois State Bar Stats. 1935, ch. 98, ¶ 43) expressly provides that no rights can be claimed under a forged signature. Sections 65 and 66 of the act provide that an indorser warrants to all subsequent holders, among other things, the following:

1. That the instrument is genuine and in all respects what it purports to be.

2. That he has a good title to it.

3. That all prior parties had capacity to contract.

4. That he has no knowledge of any fact which would impair the validity of the instrument.

In 7 Corpus Juris 692, section 420, the rule is stated thus:

"A bank which pays out money on a forged instrument may recover the same from the person who receives the money, provided, of course, the bank has suffered some injury or loss in consequence of the forged indorsement."

In Brady on Bank Checks (2nd ed.), sec. 167, the author says:

"The same principles which permit a drawee bank to recover from a collecting bank the money paid on a check bearing a forged indorsement, permit the collecting bank to recover in like manner from a prior party."

Applying sections 65 and 66 of the Negotiable Instruments Act to the facts of this case, we think that plaintiff, by her indorsement, warranted to the bank, among other things, that she had a good title to the check, and since her claim rested on a forged indorsement, it would follow that she had no title at all, and therefore her warranty was breached, with the result that the bank could look to her for the funds wrongfully received.

Defendant's counsel say that "the only Illinois case we have found involving a forged indorsement, and decided after adoption of the Negotiable Instruments Law, is *State Bank of Chicago v. Mid-City Trust & Savings Bank*, 295 Ill. 599, decided in 1921, and the same case in the appellate court, 232 Ill. App. 186, on appeal from a second trial after remandment by the Supreme Court, which case fully supports our position." From this case it appears that Samuel J. Lumbard, an attorney, issued a check on the State bank payable to James Glen, whose son forged the payee's indorsement thereon, had the bank stamp "Accepted" thereon, and deposited the check to his account in the Mid-City Bank which indorsed it to an intermediary bank, and it was paid through the Clearing House by the State Bank, drawee. Some time later the forgery of the payee's indorsement was discovered, and the check was returned by the State bank, drawee, to the Mid-City Bank, with demand for reimbursement, which was refused. Suit was thereupon instituted. The Supreme Court held that plaintiff bank (drawee)

by writing its acceptance on the check when presented by payee's son, did not as a matter of law accept the check, because there was no effective presentment for, or request, for acceptance, the son being a stranger without right and that the stamping of "Accepted" was therefore void and without effect. Nevertheless defendant contended that payment of the check by the drawee bank constituted an acceptance under the Negotiable Instruments Act, and that having "accepted" the check, the bank could not go back to its indorser for reimbursement. The court held that *payment* was not *acceptance,* saying (p. 603):

"Under this statute the payment of a check on a forged indorsement, stamping it paid and charging it to the account of the drawer do not constitute an acceptance of the check or create a liability of the bank to the true holder or the payee." The declaration in that case alleged that plaintiff bank (drawee) had accepted the check, and plaintiff's action was thereby predicated on its liability as acceptor to the payee, as true owner of the check. In consonance with the Supreme Court's holding that the check had not, as a matter of law, been accepted, the court remanded the cause for a new trial and on remandment the declaration was amended, eliminating all allegations as to the acceptance of the check. The Appellate Court in 232 Ill. App. 186, after reciting the earlier history of the case and what the Supreme Court had said, namely, that if these allegations respecting acceptance were stricken, the declaration would still state a cause of action against defendant, gave judgment for plaintiff, and the case was again taken to the Supreme Court on petition for certiorari, which was denied, thereby making the Appellate Court's decision final. Thus by denial of certiorari the Supreme Court gave its final approval to a holding permitting the drawee bank to recover from the forwarding bank the amount paid

upon a check bearing a forged indorsement of the payee.

Other jurisdictions have supported this doctrine. In *Jones Bros. v. Citizens' Nat. Bank,* 106 Okla. 162, 233 Pac. 472, plaintiff received a check on which the payee's indorsement was forged, indorsed and deposited it in the defendant bank for collection, and the check was paid by the drawee through the clearing house. Upon discovery of the forgery, the drawee charged the defendant bank, which in turn charged plaintiff, its depositor. Plaintiff sued for conversion, as did the plaintiff in this proceeding, but the court, relying upon the forgery section of the Oklahoma Negotiable Instruments Law, which corresponds substantially to our section 23, held that the charge against plaintiff's account was properly made and that plaintiff could not recover.

New York courts have frequently held to the same effect. In *Egner v. Corn Exchange Bank,* 86 N. Y. S. 107, an employee of the maker of the check forged the indorsement of the payee and procured cash thereon from plaintiff, who indorsed and deposited the check with defendant bank, which presented it to the drawee bank and received payment. On discovery of the forgery, the check was returned by drawee bank to defendant and by it to the plaintiff with demand for payment. Plaintiff reimbursed the defendant bank, as demanded, and thereafter brought suit alleging payment under mistake of fact. Recovery was refused, the court saying (p. 108):

"The defendant credited the plaintiff with the amount of the check upon the faith of his indorsement thereon, he thereby guaranteeing the genuineness of the prior indorsement, and, upon proof of the forgery of the first indorser, had a right to demand and collect the amount from any indorser of the check prior to its own."

The opinion in the foregoing case was filed after the New York Negotiable Instruments Law became effective, the pertinent portions of which are substantially the same as those in Illinois.

In *Geering v. Metropolitan Bank,* 156 N. Y. S. 582, under facts similar to those in *Egner v. Corn Exchange Bank, supra,* the court, assuming the forgery to be established, said:

"It is quite clear that plaintiff acquired no title to the checks and can claim nothing on their account. This is the effect of section 42 of the New York Negotiable Instruments Law." In that case the court also said that by indorsing the checks for deposit plaintiff guaranteed the validity of the prior indorsers, including the one alleged to have been forged.

It was said in *American Exchange Nat. Bank v. Yorkville Bank,* 204 N. Y. S. 621, that:

"It is well settled, too, that identically the same principles which render the collecting bank liable to the drawee bank also give the collecting bank a remedy over against those from whom it received the checks, and upon the faith of whose indorsement and responsibility it took them, and those persons likewise have a remedy over against their own prior indorser 'until the wrongdoer is finally made to pay.' . . . The chain of liability thus runs back through and according to the chain of indorsements."

In *Stein v. Empire Trust Co.,* 148 App. Div. 850, 133 N. Y. S. 517, a depositor placed a check for collection and the trust company receiving the deposit credited the same. Later, upon discovery that a prior indorsement had been forged, it charged back the amount against the depositor, and the court held that the charge was proper, saying (p. 519):

"If the trust company had paid the same to the plaintiff, it could have compelled him to refund the amount received."

Defendant calls our attention to a note in L. R. A. 1916 E at p. 539, entitled "Right of Drawee of Check to recover money paid on forged indorsement," which contains the following statement:

"The rule is that a drawee is entitled to recover from a party obtaining money from it on a check where there is a prior indorsement on the check that is forged. The exceptions are cases where the drawee is negligent . . . and where the paying bank is guilty of laches, and where it is estopped by reason of some action on its part. The rule that a bank is required and bound to know its depositors' signatures does not apply to the signature of an indorser." And counsel say that some 35 cases representing 15 States, the federal courts and Ontario are cited, and annotated, and excerpts reproduced therefrom, all reaching the conclusion stated in the foregoing excerpt.

Upon oral argument, and by her brief, plaintiff seeks to sustain the judgment upon the authority of *National City Bank of Chicago v. National Bank of the Republic of Chicago,* 300 Ill. 103. That case is cited as authority for the proposition that there can be no recovery by the drawee bank after it pays the check to the collecting bank and after the latter pays it out to the plaintiff who had deposited the check for collection only and who parted with the proceeds upon obtaining payment from the collecting bank. Counsel for plaintiff say that this case is "decisive of the issues in our case." A check for $629.80, dated January 4, 1915, had there been drawn on the National City Bank of Chicago, payable to the American Sheet & Tin Plate Co., to whom it was mailed. One Andrew H. Manning stole the check from the mail box, erased the name of American Sheet & Tin Plate Co. and inserted his own name as payee. He then took the check to Barnett Bros. in Chicago, and after indorsing it tendered the check in payment of some jewelry purchased from

them. As a matter of precaution, and not knowing Manning, Barnett Bros., before parting with the jewelry, sent the check by messenger to the drawee bank to see if it would be paid, and the bank said it would be and accepted it. Thereupon Barnett Bros. delivered the jewelry to Manning, who absconded. Barnett Bros. then deposited the check with its bank, the National Bank of the Republic, who in turn presented it to the drawee bank for payment, and the drawee bank paid the check to the National Bank of the Republic. Thereafter, the drawee bank returned the check to the maker, who notified it that the check was a forgery, whereupon the drawee bank voluntarily credited the account of the maker with the amount of the check and demanded reimbursement from the National Bank of the Republic, which was refused, whereupon the drawee bank, the National City Bank, brought suit against the National Bank of the Republic to recover the amount of the check. The question presented was whether there could be a recovery by the drawee bank from the collecting bank under section 62 of the Negotiable Instruments Act. The trial court rendered a judgment in favor of the drawee bank, which was affirmed on appeal and taken to the Supreme Court on a certificate of importance. The Supreme Court reversed the judgment of the appellate and circuit courts, and held that the drawee bank alone was liable. Some seven or eight pages of plaintiff's brief are devoted to a discussion of this case and the quotation of excerpts from the opinion. We think, however, that the decision involved only one question, namely, the effect of the certification by the drawee bank of a check on which, before certification, there had been an erasure of the name of the original payee and a substitution of a different name. The indorsement in that case was the *actual indorsement* of the substituted payee who tendered the check on purchase of some

jewelry. Barnett Bros., before making the sale, took the check to the drawee bank for certification, and the bank formally accepted it by proper writing on its face and returned it to Barnett Bros., who closed the sale and indorsed and deposited the check in its bank, which collected it from the drawee. The sole question involved was the effect of the acceptance, and the court held that under section 62 of the Negotiable Instruments Law the acceptance bound the drawee to pay the check when presented according to the tenor of its acceptance, the drawee admitting thereby the existence of the payee and his capacity to indorse. The court held that since at the time of its acceptance the check on its face was payable to the substituted payee, it was the check as it then read which the drawee undertook to pay, not the check as originally written, and that having by acceptance undertaken to pay the check as altered it was bound to do so as against a subsequent holder for value. The question of a forged indorsement was not involved in that case, the indorsement being the genuine indorsement of the payee. The bank by its acceptance undertook to pay the check to the particular payee designated therein, and having so undertaken it could not refuse payment when presented, nor could it after making payment recover the same from the collecting bank which acquired the check after acceptance.

From what has been said herein, we conclude that there can be no doubt as to the right of the party making the payment to recover from the one to whom payment was made. If, in addition to assuming responsibility for verification of signatures of its depositors, banks were called upon to also assume responsibility for the acts of other persons, the safety of deposit banking would be greatly jeopardized, and if each holder could not come back to his predecessor in such case, the unknown risk of prior infirmities

would greatly curtail the circulation of commercial paper and make impossible the conduct of deposit banking as it is generally conducted. Plaintiff accepted this check at the suggestion of her husband, who took it from McCormick, who was unknown to her. By accepting the forged indorsement and depositing the check in the defendant bank for collection, she warranted that she had good title, and since in fact she had no title by reason of the forgery there was a breach of her warranty, and the bank is entitled to look to her for the funds wrongfully received.

Various other points are raised, but the foregoing question is in our opinion decisive of the case and it is unnecessary to discuss the other errors assigned. In view of the fact that there is substantially no dispute as to the facts, it will be unnecessary to remand the cause. Therefore the judgment of the circuit court is reversed, and judgment entered here in favor of defendant and against plaintiff for costs.

*Reversed and judgment here for defendant and against plaintiff for costs.*

SCANLAN, P. J., and SULLIVAN, J., concur.