**68 So.2d 781**

**FIDELITY NAT. BANK OF BATON ROUGE**

**v.**

**VUCI.**

**No. 41126.**

**Nov. 9, 1953.**

Odom & Belanger, Baton Rouge, for defendant-appellant.

Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-appellee.

HAWTHORNE, Justice.

Plaintiff, Fidelity National Bank of Baton Rouge, instituted this suit to recover the face amounts of seven checks totalling $10,736.14 from the defendant Frank Vuci. There was judgment for plaintiff as prayed for, and the defendant has appealed.

Each of the seven checks was made payable to the order of Mill & Quarry Equip-

ment Company and had been issued by its drawer in payment of a debt to that company. Six of these checks were drawn upon out-of-state banks, and the other, in the sum of $2000, was drawn on the plaintiff bank.

Ralph L. Anderson, an employee of the payee, endorsed these checks without authority, cashed them with the defendant Vuci, and appropriated their proceeds to his own use and benefit, and the payee never received any of these proceeds. That Anderson endorsed the checks without authority and that he forged the endorsement of the payee has been fully established, and these checks were cashed by the defendant Vuci under this endorsement. According to Anderson's affidavit in the record, he lost the proceeds of these checks gambling on horse races at a club where the defendant Vuci was the bookmaker. There were never any business dealings between Mill & Quarry Equipment Company, payee named in these checks, and the defendant Vuci.. *Vuci endorsed each check and presented it to the Fidelity National Bank, plaintiff herein, and that bank paid to Vuci the sum represented by each check.*

The six out-of-state drawee banks upon presentation of the checks drawn on them paid to the plaintiff bank under its endorsement guaranteeing all prior endorsements the amount of each check and debited the amount to the account of the drawer. When the forgery was discovered, *each of the six drawee banks made demand upon plaintiff for reimbursement under its guarantee of all prior endorsements.* At the time this suit was instituted, the Fidelity Bank had not made reimbursement to the drawee banks, but they had relinquished the checks to the plaintiff, and it was agreed among them that the Fidelity Bank would bring suit as holder of the checks against the defendant.

The drawer of the $2000 check of which the plaintiff was drawee made demand for reimbursement of its check, and the plaintiff complied with this demand by paying to the drawer the amount of this check. There is little or no question of the defendant's liability as to this check. The real dispute concerns the right of the plaintiff to recover in this suit the money paid on the other six checks.

Plaintiff contends that it is the *holder* of these checks within the definition of that word as it is used in the Negotiable Instruments Law, LSA–R.S. 7:1 et seq., and as holder can institute this suit in its own name under the provisions of Section 51 of that law to recover from the defendant for his breach of warranty as an endorser under Sections 65 and 66. These sections provide that every person negotiating an instrument warrants that it is genuine, that he has good title, that all prior parties had capacity to contract, and that the instrument is at the time of endorsement valid and subsisting. It is the further contention of the plaintiff that it has a good cause and right of action under Article 2301 of

the Civil Code, which provides that he who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.

Defendant-appellant contends that plaintiff does not have a right or cause of action as a holder of the checks because it is not a holder within the contemplation of the N. I. L., and, having sustained no loss, is without interest, and its suit should be dismissed under the provisions of Article 15 of the Code of Practice that an action can only be brought by one having a real and actual interest which he pursues, but as soon as that interest arises he may bring his action.

Under Section 191, N. I. L., a holder means the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof, and under Section 51 the holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course *discharges the instrument*. Plaintiff in the instant case is an endorsee of each check and is in possession thereof, but, since it is in possession under a forged endorsement, we do not think it is a *holder* within the meaning of the N. I. L. Section 23 provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

Britton's work on Bills and Notes explains clearly why the plaintiff cannot be a "holder" under the N. I. L.

"Several sections of the N. I. L. make it clear, as at common law, that a maker, drawer, acceptor or indorser may successfully defend an action brought by a party in possession, by showing that the plaintiff has no title to the instrument. * * *

*"One who acquires possession of an instrument under the forged indorsement of the payee * * * cannot sue thereon because the forged indorsement is 'inoperative' and because such a party does not bring himself within the definition of a 'holder'.* In reaching this result some use, of course, is made of Secs. 30, 9(5) and 40 which prescribe the methods by which an instrument may be negotiated. If it is payable to order on its face it is negotiated by the indorsement of the payee or by the special indorsee. * * * It was clear at common law that one could not gain a title through a forged indorsement of a special indorsee whose indorsement was essential to a transfer of title, and which allowed the defendant maker, drawer, acceptor or indorser to set up in his own defense, the outstanding legal title in the party whose instrument was forged. * * *" Sec. 158, p. 749. (All italics ours.)

"The drawee may not debit the account of the drawer for money paid out or credited to a depositor on instruments bearing the forged or unauthorized indorsement of a holder whose indorsement, under applicable sections of the Act, is essential to a transfer of title. The reason is obvious. *If the drawer makes the instrument payable to the order of a designated payee and his indorsement, or that of some subsequent special indorsee, is placed thereon by a signer without authority from the holder, each subsequent purchaser is not a holder.* Each, in turn, is in unlawful possession of an instrument which belongs to another. The person whose indorsement was thus made was the last holder and is the owner with all the rights of such. An attempted payment by the drawee to the party in possession *does not discharge the instrument* because, under Secs. 88 and 119, payment can only be made to the holder. Hence when the drawee has debited the account of the drawer on an instrument bearing the forged or unauthorized indorsement of any holder whose indorsement was essential to a transfer of title, the drawer may recover the amount called for by the instrument from the drawee, i. e., force the removal of the unauthorized debit. The liability of the drawee is not based on negligence but on the simple grounds that the drawee failed to pay to the payee or subsequent holder as directed by the drawer. The drawer's right against the drawee is, however, conditioned upon his surrender of the check, bearing the forged indorsement, to the drawee to aid the latter in his action against prior parties and to determine whether there was in fact, a forgery." Sec. 142, p. 661.

In the instant case the endorsement of the payee, Mills & Quarry Equipment Company, was essential to transfer title to the checks, and, since its endorsement was unauthorized or forged, neither Vuci nor any subsequent endorsee acquired any legal or valid title thereto, nor did they become holders, and payment by the drawee banks, therefore, to one in possession after the forgery did not discharge these instruments. Since the plaintiff bank acquired possession of these checks after the forged endorsement of the payee, it is not a holder within the meaning of that word in the N. I. L. and is not entitled as such to bring this suit.

The plaintiff has a cause of action, however, notwithstanding the fact that it is not a holder. The basis for its recovery is one, or perhaps all, of the following: (1) Vendor's warranty, see Britton on Bills and Notes, sec. 139, at p. 647; (2) endorser's warranty, see Main Street Bank, Inc., v. Planters' Nat. Bank, 116 Va. 137, 81 S.E. 24; (3) money paid under a mistake of fact, see Article 2301, Civil Code; Britton, op. cit. supra. There can be no question of the liability of the defendant regardless of the theory of recovery. Under any of the theories, of course, the plaintiff *is not suing to enforce the payment of the checks as negotiable instruments, or seeking to have the checks discharged as paid.*

The law in a situation such as this is that the drawee must pay checks according to the drawer's direction. If payment is made under a forgery of the payee's name, the drawee has acted without authority and must credit the account of the drawer, whereupon the drawer must return the checks to the drawee to facilitate its recovery from its transferror. Britton, op. cit. supra; Zollman, Banks and Banking, perm. ed., secs. 4231, 4232, 4261, pp. 429–446, 469 et seq.; Beutel's Brannan Negotiable Instruments Law, pp. 442 et seq. In this case the checks had been relinquished to the drawees, and there is no question here of the drawees' liability to the drawers, their depositors. Moreover, there is no question of the liability of the plaintiff bank to the drawee banks or of the defendant to the plaintiff. "The same principles which render the collecting bank liable to the drawee bank where the latter pays a check whose indorsement has been forged gives the collecting bank a remedy over against the [remitter], which has a similar remedy against its own correspondent until the wrongdoer is finally made to pay." Zollman, op. cit. supra, sec. 4262, p. 474; American Exch. Nat. Bank v. Yorkville Bank, 122 Misc. 616, 204 N.Y.S. 621; Bergman v. Avenue State Bank, 284 Ill.App. 516, 1 N.E.2d 432.

The only real question is whether the plaintiff can bring this suit before it has actually paid the drawees, its endorsees, the amount of the six checks. Demand for payment of each check has been made on the plaintiff, and we have concluded that this demand for payment under the facts of this case is sufficient to constitute an interest in the plaintiff bank to permit it to bring this action. We consider the defendant's contention unduly technical and one for the purpose of delay only, because there is absolutely no question under the facts of this case of his ultimate liability. The plaintiff paid the checks to the defendant as an accommodation, and on the faith of his assurance that they were good. We see no good reason to require that it wait to be sued, or that it actually pay the drawees before it sues the defendant, because an interest to protect itself against loss arose as soon as demand was made on it.

In Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273, a suit to recover the purchase price of real property which the vendor had sold without title, it was recognized that the powerlessness of the purchaser to resist the true owner is tantamount to an eviction, and that the purchaser could maintain the action notwithstanding there had been no *actual* eviction by the true owner. In this case the powerlessness of the plaintiff to resist the demands of the drawee banks is tantamount to payment insofar as the defendant is concerned, and gives the plaintiff the interest necessary to bring this action.

For the reasons assigned, the judgment appealed from is affirmed at appellant's costs.

McCALEB, J., concurs with written reason.

HAMITER, J., dissents and assigns written reason.

McCALEB, Justice (concurring).

I am in accord with the ruling that plaintiff is not the holder of the checks within the contemplation of the negotiable instruments law and that it has an interest in bringing the suit, even though it has not actually reimbursed the drawees of the six checks. Since the forgery of the endorsement by Anderson is not questioned and plaintiff has conceded its liability to the drawees, its position is somewhat analogous to that of a drawer whose account has been debited by the drawee on an instrument bearing an unauthorized endorsement. In such case, as pointed out in the main opinion, the drawer may recover the amount called for by the instrument from the drawee, that is, he may force the removal of the unauthorized debit provided he surrenders the instrument bearing the forged endorsement to the drawee to aid the latter in his action against prior parties.

In the case at bar, inasmuch as the checks have been surrendered or tendered for surrender (plaintiff attaches them to its petition as part thereof), the condition precedent has been met and therefore its cause of action against Vuci is cognizable.

HAMITER, Justice (dissenting).

Probably, although not certainly, plaintiff will be required to make reimbursement to the six out-of-state drawee banks. If and when that occurs it will have both a right and a cause of action against defendant. But until so required and it appears certain that there will be a resultant loss (the record does not disclose that any loss has been sustained, and it is possible that none will ever result) plaintiff, in my opinion, is without interest to sue. Code of Practice Article 15.

I respectfully dissent.