BEER, Judge.
All Star Insurance Corporation, (hereafter, All Star) was the fire insurer of Franklin D. Paul (hereafter, Paul) covering the contents of a building at 1501 Governor Nicholls Street in New Orleans. Certain of the contents of the building were damaged and/or destroyed by fire on October 15, 1973. As a result of this loss, a settlement was made between Paul and his insurer, resulting in All Star issuing draft Number 23388 dated November 21, 1973, in the amount of $6,895.25, payable to *693 the order of Franklin D. Paul and drawn on the First Wisconsin National Bank of Milwaukee, (hereafter, First Wisconsin). Subsequently, the draft was allegedly stolen, forged, and, thereafter, cashed by Commercial Bank & Trust Company, (hereafter, Commercial) on December 5, 1973.
Upon cashing the draft, Commercial forwarded same to the drawee bank, First Wisconsin, for payment. Commercial, as is customary in such instances, guaranteed all prior endorsements. The draft was paid by First Wisconsin to Commercial based on Commercial’s guarantee of all prior endorsements.
Paul, the original plaintiff in these proceedings, filed suit against All Star, alleging that they were indebted to him in the sum of $6,895.25 by reason of the settlement and subsequent non-receipt of the draft covering the settlement.
All Star filed a third party demand against First Wisconsin claiming that they had accepted and honored the All Star draft which had been negotiated by use of a forged endorsement, and that, accordingly, First Wisconsin had improperly debited the account of All Star.
First Wisconsin filed a third party demand against Commercial alleging that Commercial had guaranteed all prior endorsements on the draft and averred that since the endorsement of Franklin D. Paul was a forgery, Commercial was obliged to indemnify First Wisconsin.
Motions for summary judgment were filed by Paul, All Star and First Wisconsin. Each contended, based on the pleadings, admissions and affidavits on file,[1] that there was no genuine issue as to any material fact and that, accordingly, Paul was entitled to judgment in the amount claimed; that All Star was entitled to judgment against First Wisconsin who was, in turn, entitled to judgment against Commercial, the cashing bank, for identical amounts ($6,895.25).
The record shows that First Wisconsin’s answer and third party demand against Commercial was filed on February 5, 1975 and that Commercial first responded on March 6, 1975 when if; moved for an extension of time within which to answer. Thereafter, on April 4, 1975, Commercial filed an answer through its then attorneys of record. That answer denied that the endorsement was a forgery and affirmatively averred that “the endorsement on the check was a proper endorsement, that in fact the signature is that of Franklin D. Paul, and that it was presented for payment by its rightful holder in due course.”
Just prior to the hearing on the various motions for summary judgment, Commercial retained other attorneys who, on the date of the hearing on the motions for summary judgment, filed an amended and supplemental answer which the court permitted to be filed by specific order dated May 2, 1975. On that same date, Commercial, through its new attorneys of record, also filed affidavits which purported to substantiate a factual controversy with respect to both the alleged forgery and/or acts of fraud and collusion in connection with the cashing of the draft.
Apparently Commercial’s attorneys made oral motion for a continuance of the hearing on the summary judgments but this was denied and the hearing on all the motions for summary judgment took place on May 2, 1975.
On May 8, 1975 the trial court granted summary judgments in favor of the respective movers. On May 12, 1975 the court amended the judgments to include dollar amounts awarded in favor of each of the movers.
A motion for a new trial, filed by Commercial on May 15, 1975 was argued on June 13, 1975. The court rendered judg *694 ment on June 20, 1975, denying the motion for a new trial and these appeals followed.
We believe that Commercial had, by their original and supplemental and amended answers, set up a properly pleaded factual dispute which, supported by affidavits, would have formed a proper basis for either a denial of the various motions for summary judgment, or, alternatively, the granting of a continuance of the hearing on the summary judgment motions to permit Commercial to further factually develop its defensive position, albeit with deliberate speed.
However, when movers took the initiative and filed very compelling affidavits in support of their respective motions for summary judgment, Commercial took no satisfactory step to develop their opposition thereto since the supporting affidavits filed by Commercial did not measure up to the requirements of LSA-C.C.P. Article 967[2]
Thus, in spite of the introduction by movers of positive, properly prepared affidavits in support of their respective positions, Commercial continued to rely upon affidavits which did not have probative standing. Indeed, Commercial’s affidavits formed little or no basis for seriously developing a factually supportable defensive position but only made vague assertions of “the possibility of collusion” involved in the endorsement and subsequent cashing of the draft. Instead of taking positive steps to set up a factual issue (for example, the filing of an affidavit of a handwriting expert stating that, in his professional opinion, the signature of Franklin D. Paul was not a forgery) , Commercial did nothing.
On the other hand, little or no time was available to Commercial’s new attorneys of record to take such action because they were obliged to defend the motions for summary judgment without having time to factually support — by contravening affidavits — the new defensive positions set forth in their supplemental answer.[3]
The record clearly supports the summary judgments in view of the fact that no acceptable affidavits have been filed in opposition. Furthermore, there is, apparently, little likelihood that any such can be filed. Although remand would obviate the possibility, however remote, that an injustice could possibly result from our preventing Commercial from having every opportunity to develop its contentions with respect to fraud, collusion and/or the fact that the signature was not a forgery, there appears to be little or no “hard core” basis for such contentions.
Since Commercial had adequate time to develop its defenses and any lack of dili-gency by the previous attorneys is imputable to Commercial, we cannot say the trial judge abused his discretion in denying the continuance which would have been used by the new attorneys of record to develop information to support adequate contravening affidavits.
Most compelling, however, is the fact that Commercial can still protect itself *695 through an action to annul any judgment obtained by fraud or collusion if such is, in actuality, the case. This is the only serious issue in this litigation, for the applicable law dealing with the responsibilities of the various parties is clearly set forth in Fidelity National Bank of Baton Rouge v. Vaci, 224 La. 124, 68 So.2d 781 (1953), Smith v. Louisiana Bank and Trust Company, 255 So.2d 816 (La.App. 2nd Cir. 1971), reversed in part on other grounds 272 So.2d 678 (La.1973) and Allan Ware Pontiac, Inc. v. First Nat. Bank, 2 So.2d 76 (La.App. 2nd Cir. 1941).
Accordingly, the various summary judgments of the Civil District Court for the Parish of Orleans are affirmed. Costs of these appeals are to be assessed on the same basis as were provided for in the district court judgments.

AFFIRMED.

. Including an affidavit by Franklin D. Paul that he had never received the draft and, perforce, had not endorsed it.

. LSA-C.C.P. Article 967 provides that “supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Therefore, the hearsay statements of affiants Fisher and Welch indicating that “it has been stated to me by an investigator of the Federal Bureau of Investigation that they are investigating the possibility of collusion between Franklin D. Paul and James E. Smith,” cannot be considered as valid affidavits in opposition to the motion.
Furthermore, the same article provides that “when a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial.”

. This entire matter could have been effectively dealt with if the trial court, having allowed the filing of the supplemental and amended answer, had also granted a short continuance for the hearing of the motions for summary judgment — sufficient to allow Commercial to either prevail or fail in their effort to support their position with acceptable affidavits.