*755
 
 OVERTON, J.
 

 This case comes before us on a writ of review directed to the Court of Appeal for the parish of Orleans. The case was dismissed in the civil district court on exceptions of no cause of action, and the judgment dismissing it was affirmed on appeal.
 

 It appears from plaintiff’s petition (the allegations of fact in which must be taken as true for the purposes of the exceptions of no cause of action) that the New Orleans & North Eastern Railroad Company on February 15, 1922, drew a draft through its agent, O. T. Washington, at New Orleans, on its assistant treasurer at Cincinnati for the sum of $317.25 to the order of M. Feitel House Wrecking Company, the plaintiff herein, payable through the Canal Bank & Trust Company of New Orleans, hereinafter referred to as the Canal Bank. It also appears from the petition that, when this draft was drawn, it was delivered to the Merchants Railway Traffic Association, Limited, hereinafter referred to as. the traffic association, which acted as plaintiff’s agent for the sole purpose of collecting the debt for which the draft was given. It also appears from the petition that, when the traffic association received the draft, it wrote the name of plaintiff thereon, as plaintiff’s agent, as follows, to wit: “Merchants Railway Traffic Association, Limited, B. E.' Slawter, Pres., Agent and Attorney in fact for M. -Feitel Housewrecking Co.,” and deposited the draft to its account for collection in the Citizens’ Bank & Trust Company, hereinafter referred to as the Citizens’ Bank. It also appears from the petition that, when the draft was indorsed and deposited in the Citizens’ Bank, that bank stamped on the back of it the following, to wit:' “Through New Orleans Clearing House, indorsement guaranteed, New Orleans, February 16/22,” from which the conclusion is drawn by the pleader that the Citizens’ Bank guaranteed the indorsement of the traffic association. ' It further appears from the petition that on the authority of the guarantee of said indorsement by the Citizens’ Bank the Canal Bank paid the traffic association the amount of said draft. It also appears from the petition that said draft was indorsed and collected by the traffic association without any authority from plaintiff; that plaintiff knew nothing of the fact that ■the draft had been issued, or that it had been indorsed and collected by said association, until several months afterwards; and that, upon learning that the draft had been so indorsed and collected, it immediately repudiated the action of the traffic association in indorsing and collecting it, and so notified the Citizens’ Bank and the Canal Bank.
 

 After setting forth the foregoing facts, plaintiff then alleges that the acts and doings of the Citizens’ Bank and the Canal Bank, as stated above, have caused it to sustain a loss of $317.25 for the amount of said draft, and prays for judgment against both banks accordingly.
 

 Plaintiff’s position, as appears from its’ brief, is that, when the Citizens’ Bank stamped on the back of the draft, “Through New Orleans Clearing House, indorsement guaranteed,” its action in so doing was equivalent to an acceptance of the instrument or certification of it by the bank, and, moreover, that the bank, in guaranteeing the indorsement, which indorsement appeared on its face to have been made by procuration, was charged with notice that the agent making the indorsement hp.d but a limited authority to sign, and that the bank was negligent in affixing its guarantee, without making inquiry, thus making it easier to injure plaintiff, the payee of the instrument, and by such negligence became liable -to it for the loss sustained. As relates to the.Canal Bank, the position of plaintiff is that the Canal Bank, having paid the draft to one who was not entitled to payment on an indorsement made without authority, is also liable to it for the loss sustained.
 

 
 *757
 
 Plaintiff treats the draft as a check drawn by the New Orleans & North Eastern Railroad Company against'the Canal Bank, the instrument being payable through that bank, and cites, among other authorities, in support of the cause of action, which it contends it has, the cases of Vanbibber v. Bank of Louisiana, 14 La. Ann. 486, 74 Am. Dec. 442, and Gordon & Gomila v. Muchler, 34 La. Ann. 604.
 

 In the Vanbibber Case it was held that a bank is liable to the payees of a check, made payable to their order, when the cheek is paid on a forged indorsement, made by the collector of the payees, who receives the check in payment of a bill intrusted to him for collection by his employers. And, as for reason why this is so, it was said that—
 

 “There is an implied engagement, upon the part of the bank, to pay to third parties the checks drawn in their favor by depositors, and thus there is a
 
 privity of contract
 
 between the plaintiffs and the bank.” (Italics ours.)
 

 On the other hand, in Case v. Henderson, 23 La. Ann. 49, 8 Am. Rep. 590, where the question was whether the holder of a cheek, drawn by a third party on a bank, has a cause of action thereon against the bank in case of the refusal of the bank to pay, and hence whether the holder could plead the check in compensation, it was held that he had no cause of action thereon against the bank, and hence could not plead the cheek in compensation against the bank’s demand. The court based its ruling on the case of the Bank of the Republic v. Millard, 10 Wall. 152, 19 L. Ed. 897, and said:
 

 “The right of the depositor is a chose in action, and his check does not transfer the debt or give a lien upon it to a third person without the assent of the depositary; .there is no privity of contract between the holder of the check and the bank or depositary, and without this there is no foundation for an action by the former against the latter.”
 

 In Gordon & Gomila v. Muchler, 34 La. Ann. 604, which is the second case cited by plaintiff, the ruling in Case v. Henderson was expressly overruled, and it was said:
 

 “In tlie' slightly considered case of Case v. Henderson, 23 La. Ann. 49, 8 Am. Rep. 590, it was held that .the checkholder did not acquire a right of action against the bank, upon the authority of the Supreme Court of the United States, in Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897. That was a case at law, in error to the Supreme Court of the District of Columbia, where the common law prevails, and the able and perfectly accurate opinion of the court is based upon the common-law principles: 1st, that there was no privity of contract between the bank and the checkholder,' at the time the check was given, and 2d, that no such privity was created by the mere presentation of the check, without acceptance of the bank, because the depositor’s right was a mere chose in action not assignable without the consent, of the debtor.
 

 “Choses in action correspond substantially to, or, at least, are included within the civil law definition of incorporeal rights.
 

 “Our law, differing therein from the common law, distinctly recognizes the assignability of that class of incorporeal rights known at common law as choses in action, and provides for the perfectibility of such assignments by notice to the debtor' and entirely independent of his consent, and, from the moment of such notice, creates a privity between the debtor and the assignee, amounting to a perfect legal tie.
 

 “It follows that the reasons underlying the common-law decisions quoted have no application or existence under our law, and the decisions, therefore, have no application as authority here.”
 

 In State ex rel. St. Amand v. Bank of Commerce, 49 La. Ann. 1060, 22 So. 207, the ruling in Gordon & Gomila v. Muchler seems to have been adhered to, for the court held, in effect, that, unless the cheek is accepted, or the bank is notified that the check has been drawn, no action lies against the drawee, which implies that, if the bank has been notified that the check has been drawn, although it has not accepted the check, a cause of action arises in favor of the holder against the drawee, assuming that the drawer has sufficient funds in the bank to meet the check at the time the notice is given..
 

 The rule stated in Gordon & Gomila v.
 
 *759
 
 Mucliler was the law in this state at the time of’the adoption of the Negotiable Instruments Law (Act 64 of 1904); But the rule stated in that case was changed by the adoption of that act, for section 189 of the act reads:
 

 “A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check.”
 

 Hence it appears that, since the passage of the Negotiable Instruments Law, the law in this state is that, until a check has been accepted or certified by the drawee bank, it does not operate as an assignment of any part of the funds of the drawer in the bank, although the bank may have been notified of the drawing of the check,- and hence, unless the check has been accepted or certified by the bank, there is no privity between the bank and the holder, and therefore the holder has no cause of : action against the bank.
 

 In this ease it is obvious that the cheek was not formally accepted or certified, but plaintiff contends that the payment of the check by the Canal Bank was equivalent to an acceptance of it. In disposing of a similap argument in First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229, the Supreme Court of the United States said:
 

 “This argument is based upon the erroneous assumption that the bank has paid' this check. If this were true, it would have discharged all of its duty, and there would be an end of the claim against it. The bank supposed that it had paid the check; but this was. an error. The money it paid was upon a pretended and not a real indorsement of the name of the payee. The real indorsement of the payee was as necessary to a valid payment as the real signature .of the-drawer; and in law the check remains. Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. , The state of the account was the same after .the pretended payment as it was before.
 

 “We cannot recognize the argument that a payment of the amount of a check or sight draft under such circumstances amounts to an acceptance, creating a privity of contract with the real owner.”
 

 From the foregoing it is clear that the payment in this instance, by the Canal Bank, on an unauthorized indorsement, did not amount to an acceptance.
 

 Nor is there any merit in plaintiff’s contention that, when the Citizens’ Bank stamped on the back of the instrument, “Through New Orleans Clearing House, indorsemept guaranteed,” its action in so doing amounted to an acceptance or certification of the instrument within the meaning of section 189 of the Negotiable Instruments Law. Those words, as observed,' in effect, by the Court of Appeal, when the case was before it, amount to nothing more than a statement by the Citizens’ Bank guaranteeing the genuineness of the indorsement appearing on the instrument, which, as we have seen, was the supposed indorsement of the payee through its agent. That guarantee inured, in this instance, to the benefit of the Canal Bank, but it does not amount to an acceptance or certification of the instrument within the meaning of section 189 of the Negotiable Instruments Law.
 

 Nor do we think that the allegations of the petition that the Citizens’ Bank was negligent in guaranteeing the indorsement of plaintiff by the traffic association without first ascertaining the authority of that association to indorse plaintiff’s ñamé on the check, and that t)ae Canal Bank was negligent in paying the check' without ascertaining the authority of plaintiff’s agent to indorse the instrument, show a cause of action against either bank for the amount of the check. The only result of such negligence in making the guarantee, as we have said, is to make the Citizens’ Bank, which made it, liable to any one acquiring the instrument thereafter, or to-
 
 *761
 
 make it. liable to the drawee in paying
 
 the
 
 instrument, in the event the indorsement of plaintiff’s name thereon did not prove to be genuine or made with authority, and the only result of the negligence of the Canal Bank in paying the instrument, on the faith of plaintiff’s indorsement, the indorsement being unauthorized, was to make the supposed payment no payment at all, and to give the bank, as appears from section 23 of the Negotiable Instruments Law, no right to retain the instrument.
 

 It follows from what we have said that plaintiff’s action, if the allegations of his petition be true, is not against either bank for the amount of the check, but, as the check has never in reality been paid, its action for such amount is against the drawer, just as it would have been had the bank, on a proper indorsement, when the check was first presented, refused to pay it. It, also follows that, if plaintiff wishes to recover possession of the cheek, it may do so, in a proper suit, upon proper allegations, brought against any one having possession of it, but not in this suit in which it does not even appear who has possession of the instrument.
 

 For the foregoing reasons our conclusion is that plaintiff’s petition shows no cause of action against either bank.
 

 Before closing, we may add that, were we to treat the instrument in question as a draft on the railroad company, instead of as a check, payable by the Canal Bank, from which standpoint the case has not been presented, still the final result would be the same.
 

 For the reasons assigned, the judgment under review is affirmed; plaintiff to pay the costs of this writ.
 

 O’NIELL, C. J., concurs in the decree, but regards the instrument as a draft, not a check.