ELLIS, Judge.
This is a suit on a loan evidenced by a check for $10,000.00. The defendants had allegedly promised to execute a note in return for a $10,000.00 check, which was prepared by Charles A. Brown, one of the defendants, and signed by plaintiff and made payable to Brown-Alsbrooks Stockyards, Inc. It was delivered by plaintiff to one of the defendants, Charles A Brown. The defendant corporation deposited the check in its bank account and the check was honored.
After a trial on' the merits, the District Court rendered a judgment for the plaintiff for $10,000.00 with legal interest thereon from date of judicial demand until paid against one defendant, Roy Kirk,[1] and dismissed plaintiff’s demands against all other parties defendant. Oral reasons for judgment were given and appear in the record.
There are many undisputed facts presented herein. During the period in question Roy Kirk was operating a newly opened auction barn for the defendant corporation in Marksville, Louisiana. It is admitted by all parties that he had become heavily indebted unto the corporation for almost $51,000.00. Two of the defendants, Charles A. Brown and Charles W. Alshrooks, were the principal stockholders of Brown-Als-brooks Stockyards, Inc., at the time. On the morning of January 20, 1962, Brown had put a good deal of pressure on Kirk to make a payment on his indebtedness to the corporation. On that day, Cox came to the auction barn to get Kirk, a personal friend for many years, to help him find some land to purchase, Kirk explained to Cox when they met that the stockyard needed funds to operate since it was just getting established and he requested a loan of $15,000.00 from the plaintiff. Cox stated he could not lend that much money but could make $10,000.00 available. The main point of contention arises here. Cox and Kirk both testified to the effect that Brown *573 was notified the plaintiff wanted Brown, Alsbrooks and the corporation to execute a promissory note for the loan and that Kirk was to co-sign the note. According to the plaintiff and Kirk, Brown agreed to this arrangement. It is admitted that Alsbrooks was not present during these transactions but was in the stockyard building. Plaintiff admits he at no time even mentioned the matter to Alsbrooks.
Brown’s testimony is directly opposed to this version of the transaction. He states that at no time did he request plaintiff to lend any amount of money to him personally or to the stockyards. He stated Cox was brought to him by Kirk and he understood Cox was willing to lend Kirk the funds in question. Brown made the check out at Cox’s request because the latter stated he could “just barely sign his name.” It was deposited to the account of Brown-Als-brooks Stockyards, Inc. Plaintiff asked for a blank note which Brown presumed Kirk was to sign and give to Cox to secure Kirk’s loan from Cox of $10,000.00. Plaintiff admits he never asked Brown to sign a note. There was no note available and Brown told Cox & Kirk he would get them a blank note in Baton Rouge and send it to Kirk. He either forgot, or in any event did not send it. Nothing was said about the failure to receive the note by Cox or Kirk. The check issued by Cox was honored and, thereafter, neither Brown nor Alsbrooks heard anything further concerning the matter for several months. The claim was turned over to plaintiff’s attorney some five months after the check was cashed and it was then that Brown-Alsbrooks Stockyards, Inc., was notified Cox was requesting repayment of the amount of the check. Brown testified, without contradiction, that he had talked with Cox at a horseshow after the check was issued, but before the claim was turned over to an attorney, and no mention was made of the matter.
There is considerable testimony in the record giving the financial background of the transaction in question. The record shows the defendant corporation had good credit and had borrowed $35,000.00 from banks in January of 1962. Kirk took bankruptcy after the loan in question was made and none of the other parties in this lawsuit were listed as creditors in the bankruptcy. A deed in evidence shows Brown obtained a title to a tract of land containing 1,541 acres from Kirk by assuming a mortgage balance of approximately $195,-000.00. The deed was executed on January 29, 1962, although a $23,000.00 note had been paid by Brown on the transfer in December of 1961 on behalf of Kirk. The latter was allowed to receive the income from an oil lease on the property after the transfer. Furthermore, he was allowed the use of the place and collected the rentals on it after the transfer. The agreement was that Kirk would receive credit on his debt to Brown-Alsbrooks Stockyards, Inc. for any amount received above the mortgage indebtedness. On the date of the trial, Brown stated “we have never been offered as much as he owed on it.” Brown also testified he had a reason for drawing the check so that it would be payable to Brown-Alsbrooks Stockyards, Inc. rather than to Kirk. The following portion of the testimony, which is un-contradicted, reveals this:
“A. Just shortly before that time, we had had a customer to make a check to Roy Kirk which should have been made out to Brown-Alsbrooks and he had taken the money and spent it.”
Cox admitted that neither Brown nor Alsbrooks were more than casual acquaintances. On the other hand Cox had known Kirk for ten or twelve years and was a close friend of the Kirk family and had done business with him numerous times.
The testimony reveals the amount of $10,000.00 sued upon was credited to Kirk’s account with Brown-Alsbrooks Stockyards, Inc. Plaintiff takes the position that the failure of the defendant corporation to produce its books to corroborate this point gives rise to a presumption that the records would not corroborate the testimony in question. We do not think so. Plaintiff *574 had every opportunity prior to the day this case came on for trial to obtain an order allowing him to view and inspect the account books of defendant corporation. He was forewarned in defendant’s answer that the defendant corporation claimed the funds received were credited to Roy Kirk’s account with defendant corporation. The District Court would not allow a subpoena duces tecum to issue at the time of the trial because it would necessitate a delay. Under the facts and circumstances we believe the Court’s ruling was correct.
On appeal plaintiff’s main contention is that defendants failed to prove their special defenses. It is our opinion that defendants have denied the fact that they borrowed the money. This is not a special defense but a denial of the facts alleged by plaintiff and sued upon by him. After a careful review of this case, it is found there is no error in the trial court’s judgment. It is found that plaintiff has failed to sustain the burden of proving the debt sued upon was ever actually incurred by Charles Brown, Charles W. Alsbrooks, and Brown-Alsbrooks Stockyards, Inc. The plaintiff himself concedes he did not prove his case against Charles W. Alsbrooks. The debt was admitted by Roy Kirk against whom judgment was rendered.
Plaintiff has completely failed to prove that Brown had any knowledge that Cox was lending the $10,000.00 to anyone other than Kirk. Cox said nothing to Brown to even indicate he believed he was lending the money to Brown-Alsbrooks, the corporation, and Kirk, all of whom were to sign and deliver a note to him. The entire transaction in so far as the consent to lend the $10,000.00 to someone was between Kirk and Cox. If Kirk led Cox to believe the money was for the parties above named he had no right or authority to bind them or to borrow money for them and they are not bound.
For the reasons assigned, the trial court’s judgment is affirmed in its entirety.
Affirmed.

. Roy Kirk, a defendant, did not appeal.