272 So.2d 678 (1973)
Oscar Lionel SMITH
v.
LOUISIANA BANK & TRUST COMPANY et al.
Nos. 52096, 52113.
Supreme Court of Louisiana.
January 15, 1973.
Rehearing Denied February 19, 1973.
*679 Booth, Lockard, Jack, Pleasant & LeSage, H. F. Sockrider, Jr., Shreveport, for plaintiff-applicant.
Cook, Clark, Egan, Yancey & King, Shreveport, Leon Gary, Jr., Baton Rouge, Sidney E. Cook, Shreveport, for defendant-respondent.
SUMMERS, Justice.
The Louisiana State Bond and Building Commission awarded a contract to Nortech Construction Company, Inc., for renovation of the East Louisiana State Hospital. To finance its work on the project Nortech, through its president Clarence L. Madden, Jr., negotiated with Oscar Lionel Smith for loans.
When the construction contract was negotiated on February 17, 1966, Smith loaned $10,000 to Nortech. The loan was secured by a discounted promissory note dated February 17, executed by Nortech to Smith's order for $11,000. At the same *680 time Madden, acting for Nortech, wrote to Cecil M. Hill, Director of the Commission, advising that he had made financial arrangements with Smith in connection with the project and requested that all estimate checks be made payable jointly to Nortech and Smith. In a letter reply dated February 24, 1966 Hill acknowledged Madden's request, agreeing that the checks would be mailed to Nortech, payable jointly to Nortech and Smith.
In keeping with the arrangement, the Commission issued its check payable to Nortech and Smith, dated March 8, 1966 for $18,976. The check was endorsed by Nortech and Smith. On March 11, 1966 Nortech paid Smith $3,666.66. On March 29, 1966 the Commission issued its check payable jointly to Nortech and Smith for $38,927. Nortech then paid Smith $3,666.66 with its check dated April 1, 1966. Again, Nortech received a check from the Commission dated April 27, 1966 for $13,014 with Smith as a joint payee. On April 29, Nortech paid Smith $3,666.66. In each instance the Commission checks were endorsed by Nortech and Smith. After this last payment, the $11,000 discounted note of February 17, 1966 was surrendered to Nortech.
Further negotiations between Smith and Madden led to the execution by Nortech of a $15,000 note in Smith's favor dated May 13, 1966. On that same day Smith issued his check to Nortech for $1,000. Two more checks were issued by Smith to Nortech on May 16, 1966, one for $4,000 and another for $3,000. At that same time, Madden, acting for Nortech, addressed a letter to Smith in which he assigned to Smith $15,000 of the proceeds from the project. No copy of this assignment or notice of its execution was ever communicated to the Commission.
Again on May 19, 1966 Smith issued his check for $1,600 to Nortech. The Commission's check for $15,811.20 was received by Nortech on May 30, 1966, endorsed by Smith and the proceeds retained by Nortech, Smith relinquishing the full proceeds of this check to Norteen because of Nortech's shortage of funds.
Nortech received a $2,000 check from Smith on June 18, 1966 and the same amount on June 20. This brought the total of this second loan to $13,600. Nortech then paid Smith $3,500 on June 28. Checks were thereafter issued by the Commission to Nortech and Smith for $7,502.40 on July 1, $2,338.20 on August 4 and $2,250 on November 2. Nortech paid Smith $5,000 on July 5, and $1,100 on August 8.
Smith contends that "about" the time the second note was executed (May 13, 1966) he gave Madden "about" $13,500 in cash as a loan to Nortech and received the $15,000 note referred to above as security therefor. According to Smith, no note was furnished to secure the loan made to Nortech with the checks totaling $13,600.
Smith testified that he became concerned by Madden's failure to pay the balance due by Nortech, and he therefore called Hill, the Commission Director, to ascertain whether additional funds remained due on the project. When Hill told him about $11,000 remained due to Nortech, Smith stated that Nortech owed him more than that amount and asked Hill to mail the last check to him. Hill refused saying the check would be mailed to Nortech as agreed in his letter of February 24, 1966.
Thereafter the Commission issued the final project check for $10,980, dated January 30, 1967 payable jointly to Nortech and Smith. The check was drawn on Capital Bank and Trust Company in Baton Rouge. Madden, claiming verbal authority from Smith, endorsed Smith's name to the check and deposited the check to Nortech's account in the Louisiana Bank and Trust Company in Shreveport. The check was transmitted by Louisiana Bank and Trust Company with its endorsement guaranteeing all prior endorsements, to a Dallas bank for collection. It was then forwarded to Capital Bank and Trust Company in *681 Baton Rouge where it was paid, and the Commission's account was debited.
When Smith later learned that his endorsement on the $10,980 check of January 30, 1967 had been forged by Madden, he made demand for the full proceeds of the check upon Madden, the endorser, Louisiana Bank and Trust Company, and its insurer Maryland Casualty Co., the paying bank, Capital Bank and Trust Company, the drawee bank, and Louisiana State Bond and Building Commission, the maker of the check. This suit followed in which all of these parties were named defendants, and judgment in the full amount of the check was sought against all defendants jointly and in solido.
A number of exceptions were filed by the defendants and overruled by the trial judge. Louisiana Bank and Trust Company answered by a general denial, pleading Madden's authority to endorse the check on Smith's behalf, and praying, in a third party petition, that, in the event they were cast, there be judgment over in their favor against Madden. The Commission likewise answered and also asserted claims against Louisiana Bank and Trust Company and Capital Bank and Trust Company in a third party petition for any amounts it would be condemned to pay to Smith. Madden filed a general denial.
The trial judge found that Madden was without authority to endorse Smith's name, and his actions in doing so amounted to a forgery. He rejected the claim made by Smith that the Commission agreed to and recognized that an assignment had been made of project funds from Nortech to Smith. The contention that Smith had a claim against the Commission or the banks was also found to be without merit. He decided that the extent of the balance due by Nortech to Smith on valid loans was $321. Judgment was rendered in that amount against Madden with interest and attorney's fees.
On appeal to the Second Circuit the judgment was amended in part and reversed in part. La.App., 255 So.2d 816. The Commission was cast for $5,490, one-half of the amount of the check, and judgment in a like amount was rendered in favor of the Commission against Capital Bank and Trust Company on its third party demand. The Commission's third party demand against Louisiana Bank and Trust Company, Maryland Casualty Company, Madden and Nortech were rejected. Costs were prorated between the Commission and Capital Bank and Trust Company.
The Court of Appeal viewed the entire matter "simply a suit on a check by a co-payee, whose name was forged, against the drawer of the check who did not specially plead lack or failure of consideration." Applications for writs were timely filed by Capital Bank and Trust Company and Oscar Lionel Smith. The Commission's application for writs was not timely filed. Madden and Nortech are insolvent and the issues presented by their pleading are no longer asserted. Louisiana Bank and Trust Company has apparently withdrawn from the litigation.
Certain factual issues presented by the record are important to our decision. We therefore state our findings on these issues at the outset.
The trial judge properly found that Madden did in fact forge Smith's name to the endorsement of the $10,980 check of January 30, 1967. Moreover, Smith's claim that he gave Madden about $13,500 in cash as a loan to Nortech in May 1966 and received the $15,000 note in return is unfounded. The $15,000 note, the trial judge found, and we agree, was given in return for the checks totaling $13,600 given by Smith to Madden in the amounts and on the dates mentioned in the narrative of facts. Aside from the fact that the discount rate evidenced by the difference between the sum of the checks ($13,600) and the amount of the note ($15,000) is $1,400 or approximately 10 percent, almost the identical discount rate charged by Smith on the $11,000 note of February 17, 1966, *682 there is the question of Smith's credibility. The pattern of these legitimate transactions gives little cause to believe that Smith would use $13,500 cash at the same time when dealing with the same party and not take a note for the $13,600 loaned by check. The record reveals to our satisfaction that Smith's credibility was questionable. The trial judge who saw and heard the witnesses must have arrived at the same conclusion. Smith testified that in May 1966 he obtained about $13,500 in cash from his safety deposit box. It was shown by the testimony of a bank official, however, that the box had not been opened since January 1966. In addition Madden categorically denied that he received "about $13,500" in cash from Smith during May 1966. Other inconsistencies and uncertainties in Smith's testimony support our finding.
The trial judge correctly found, therefore, that the extent of Nortech or Madden's indebtedness to Smith was $321 on January 30, 1967 when the $10,980 check was issued. Notwithstanding this evidence, Smith asserts that the extent of Nortech's indebtedness is immaterial, for Section 24 of the Negotiable Instruments Law (NIL) (La.R.S. 7:24) provides that "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Further, Smith contends, defendants did not affirmatively plead failure of consideration in their answer as required by Article 1005 of the Code of Civil Procedure. Pertinently, the article provides: "The answer shall set forth affirmatively ... failure of consideration ... and any other matter constituting an affirmative defense."
Although negotiable instruments are by Section 24 of the N.I.L. deemed prima facie to have been issued for a valuable consideration, the presumption operates only until overcome by other valid evidence. Martin v. Donovan, 15 La.Ann. 41 (1860). Furthermore, in the instant case, the Commission agreed to designate Smith as a co-payee on the checks as an accommodation and for the convenience of Nortech and Smith. At no time did the Commission consider the February 17 request by Nortech to make Smith a co-payee to be an assignment. The nature or extent of the arrangements between Nortech and Smith were never revealed to the Commission.
When an assignment was later made by Nortech to Smith on May 16, 1966 of funds due Nortech by the Commission to the extent of $15,000 to secure the May 13 note for that amount, the Commission was never notified. Only Smith's vague statement to Hill, Director of the Commission, in December 1966 that Nortech owed Smith more than the $11,000 balance due to Nortech by the Commission stands to support the contention that the Commission received notice of that assignment. The evidence is insufficient.
Since the Commission made Smith a co-payee on the check for accommodation and convenience and there was an entire want of consideration between the Commission and Smith, Smith cannot demand payment of any portion of the check from the Commission. The forgery of his endorsement does not alter his claim against the Commission. The fact is, however, that Smith has no claim against the Commission. It would perhaps be different if a third party, a holder in due course, acting upon a valid endorsement of the check by Smith, sought collection against the Commission, but insofar as Smith is concerned, he has no recourse against the maker, for the maker owes him nothing. Caskey v. Crawley, 16 La.App. 415, 134 So. 711 (La.App.1931); Comment, 17 La.L. Rev. 466, 467 (1957).
The law does not support Smith's argument that defendants may not go into the question of consideration for issuance *683 of the check insofar as he is concerned, because they have failed to affirmatively set forth in their answer "failure of consideration" as required by Article 1005 of the Code of Civil Procedure. Strictly speaking, defendants are not claiming a "failure of consideration". Instead their defense is "want of consideration". The two are distinct and separate defenses. The defense of failure of consideration concedes that there was consideration for the instrument in its inception, but alleges that the consideration has wholly or partially ceased to exist. The defense of want of consideration, on the other hand, asserts that no consideration ever existed for the negotiable instrument.
Thus it may be said that because Article 1005 of the Code of Civil Procedure refers to failure of consideration and makes no reference to want of consideration, the article does not require that want of consideration be set out in the answer as an affirmative defense. Moreover, once Smith pleaded the obligation of Nortech and proceeded with detailed efforts to prove that consideration existed for the indebtedness he claimed, defendants could not be denied the right to bring forward their evidence to the contrary. In their answers defendants denied that Nortech was indebted to Smith. Their position therefore is not a special defense. It is, instead, a denial of the facts alleged by Smith. An affirmative defense or special plea is not necessary to permit the introduction of evidence which tends to rebut evidence introduced by the plaintiff in the proof of his case. Cf. Cox v. Brown-Alsbrooks Stockyards, Inc., 165 So.2d 571 (La. App. 1964); Moody v. Gossen, 125 So.2d 264 (La.App. 1960); Williams v. Fisher, 79 So.2d 127 (La.App. 1955).
The principles which deny Smith the right to assert a claim on this check against Louisiana Bank and Trust Company, which cashed the check with his forged endorsement, or against Capital Bank and Trust Company, the drawee bank, are set forth in M. Feitel House Wrecking Company v. Citizens Bank and Trust Company, 159 La. 752, 106 So. 292 (1925) and Fidelity National Bank of Baton Rouge v. Vuci, 224 La. 124, 68 So.2d 781 (1953). These cases hold that the payee's action is properly against the drawer of the check because, as the Feitel Court said, "the check has never in reality been paid." Just as the payee has a cause of action against the drawer, the drawer has a cause of action against the drawee to compel the removal of an unauthorized debit. The drawee, in turn, has an action for breach of warranty against the collecting bank on its endorsement guaranteeing all prior endorsements. In turn, the collecting bank has an action against the cashing bank on its endorsement. The cashing bank must then go against the forger to recover the funds.
The method thus prescribed is sound in theory. The payee is directed to the drawer who issued the check where all proper defenses which concern the merits of the obligation may be properly asserted. The case is a suit on a contract and there is privity between the drawer and the payee. The payee is given an opportunity to recover against the drawer, for he has never been paid; the drawer may recover against the drawee because the drawee did not pay in accordance with the drawer's order; the drawee may recover against the collecting bank on its endorsement; the collecting bank may recover against the cashing bank on its endorsement; the cashing bank may recover against the forger under any number of theories, breach of warranty, recovery of money paid under a mistake of fact, etc.
Under this established theory the trial judge correctly denied recovery to Smith against Louisiana Bank and Trust Company, Maryland Casualty Company, and Capital Bank and Trust Company. We have also found that there was a want of consideration between the Commission and Smith, but the judgment rendered against the Commission became final when *684 the Commission's application for writs was not timely filed. No relief against this final judgment is permitted. We do hold, however, that Capital Bank and Trust Company has established want of consideration for the issuance of the check by the Commission to Smith. The Commission as drawer, therefore, cannot successfully assert a claim against Capital Bank and Trust Company its drawee bank for reimbursement of any funds the Commission must pay on the controverted check.
For the reasons assigned, there is judgment in favor of Oscar Lionel Smith against Nortech and Madden for $321, with interest, attorney's fees and costs as prayed for.
It is further ordered, adjudged and decreed that there is judgment in favor of Capital Bank and Trust Company and against Oscar Lionel Smith dismissing Smith's suit against said bank at his cost.
SANDERS, J., concurs in the decree.
TATE, J., concurs and assigns written reasons.
BARHAM, J., dissents and assigns reasons.
DIXON, J., dissents.
TATE, Justice (concurring).
Smith was co-payee (along with Madden's corporation, Nortech) on a check of $10,980 drawn by the Louisiana State Bond and Building Commission (the "Commission") upon the Capital City Bank and Trust Company ("Capital City"). Madden forged the co-payee Smith's name and cashed this check at the Louisiana Bank & Trust Company ("Louisiana Bank").
Smith sues, inter alia, the Commission, Capital City, and Louisiana Bank.
The court of appeal held, 255 So.2d 816 (La.App.2d Cir. 1971), relying upon M. Feitel House Wrecking Company v. Citizens Bank & Trust Co., 159 La. 752, 106 So. 292 (1925) and succeeding jurisprudence, that Smith had no cause of action against Capital City and Louisiana Bank for their wrongful payment of the forged check. It therefore under Feitel jurisprudence awarded judgment for one-half the value of the check only against the Commission, the drawer of the check subsequently forged (granting the Commission recovery over on its third party demand against Capital City, which had wrongfully paid the forged check).
As I recall, we granted certiorari on Smith's application, 260 La. 700, 257 So.2d 155 (1972) primarily to review the Feitel jurisprudenceupon the contention that this State's Feitel interpretation of negotiable instrument law is against the overwhelming weight of authority as set forth by the Annotation, 100 A.L.R.2d 670, 686 (1965). But see Annotation, 137 A.L.R. 874 (1942), supplementing 69 A.L.R. 1076 (1930). Under the rule set forth in these annotations, the true owner of a check may recover against the collecting bank who pays it under a forged endorsement (i. e., the Louisiana Bank here), but not against the drawee bank (i. e., Capital City). Strong arguments exist in favor of permitting the defrauded payee to join all three parties, as here, and recover in one suit instead of requiring a multiplicity and circuity of actions.
Under the present circumstances, where the former Uniform Negotiable Instruments Law remains in effect in only Louisiana, I am unwilling at present to dissent from the majority's refusal to reconsider the holding of Feitel that neither the collecting bank nor the drawee bank are liable directly to the check's owner for cashing a check pursuant to a forged endorsement. I therefore concur in the majority holding to this extent.
I also concur in the rejection of Smith's demands to hold all the defendants solidarily *685 liable for the full $10,980 (or to hold any of them liable upon other theories than that as held by the court of appeal), for reasons stated in the intermediate court's opinion or by the present majority.
The court of appeal held that Smith was entitled to judgment against the Commission, the drawer of the check to him, which was wrongfully paid upon the forged endorsement.[1] See La.R.S. 7:41. The court of appeal fixed the Commission's liability to Smith at one-half of the amount of the check made, on the theory that each of the two co-payees is presumed to have a one-half interest in the check.[2] Cf. Civil Code Article 2086. This portion of the court of appeal judgment has become res judicata, since its application for certiorari was rejected (for procedural default). 260 La. 705, 257 So.2d 158 (1972).
Nevertheless, we did grant the application of Capital City, 260 La. 699, 257 So.2d 155 (1972) which had been held liable to the Commission upon the latter's third-party demand, in accordance (see Footnote 1) with the Feitel jurisprudence, especially Fidelity National Bank of Baton Rouge v. Vuci, 224 La. 124, 68 So.2d 781 (1953).
The failure of the Commission, original defendant and third-party plaintiff, to seek relief timely against the original plaintiff probably does not bar the third-party defendant, Capital City, from urging the defenses available to the original defendant, the Commission, to the principal demand. See La.C.Civ.P. Art. 1115. We should note, nevertheless, that the effect of our majority judgment is to deprive the Commission of its right to recover from Capital City the amount Capital City paid pursuant to a forged endorsement, but not to deprive the plaintiff of his recovery against the Commission itself.
In my view, the court of appeal decision correctly held Capital City liable to the Commission under the Feitel jurisprudence, as well as correctly held the Commission liable to the plaintiff Smith. Nevertheless, the plaintiff's rights against the Commission are not adversely affected by our decree, so the majority holdings with regard thereto are dicta insofar as Smith.
The Commission did not appear in this court to oppose the contentions of Capital City. In fact, its own rejected application for review adopted a similar theory of the facts and law. See Par. 17, Commission's application, our Docket No. 52,138. I will therefore concur in our decree reversing judgment on the third-party demand in favor of the Commission against Capital City, on the theory that this is uncontested.
BARHAM, Justice (dissenting).
First, I must conclude that the majority is incorrect in holding that Nortech's co-payee on the negotiable instrument, the plaintiff Smith, was a payee without interest. It is immaterial to the rights of the drawer of the instrument why Nortech required Smith to be a co-payee or whether any consideration existed between Nortech or Smith. Nortech was issued the check by the Commission, the drawer, for valid consideration, and therefore as to the drawer there was consideration for the co-payee as well. The majority's holding that no consideration was a defense that could be urged by these defendants is in my opinion erroneous.
Moreover, I am of the opinion that the holding in M. Feitel House Wrecking Company v. Citizens Bank & Trust Co., 159 La. 752, 106 So. 292 (1925), is not the *686 proper rule of law. Although Louisiana is the only state which retains the Negotiable Instruments Law, we should be governed by the majority rule prevailing in the other states when they operated under that law. Feitel and the majority view here are contrary to that rule followed by the other jurisdictions.
While I agree with much of the reasoning of Mr. Justice Tate in his concurrence, I am compelled to dissent rather than concur.
NOTES
[1] Under the Feitel jurisprudence, the payee of the instrument paid by forged endorsement must recover from the maker-drawer, who then must recover from the drawee bank, which then must recover from the collecting bank on its endorsement, which then must recover from the forger.
[2] If we could reach consideration of this issue, my unresearched view is that probably the Commission should be liable to the payee only for his actual interest in the check.