401 So.2d 584 (1981)
Mrs. Paul J. FONTENOT, Plaintiff-Appellant,
v.
ESTATE OF Andre VIDRINE, Defendant-Appellee.
No. 8241.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
*585 Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Pucheu, Soileau & Coreil, A. Gaynor Soileau, Ville Platte, Darrel D. Ryland, Marksville, Sklar, Nachman, Schmidt & Bowsher, Robert T. Bowsher, Baton Rouge, Ashlock & Vidrine, Jules R. Ashlock, Ville Platte, for defendant-appellee.
Before CULPEPPER, FORET and LABORDE, JJ.
FORET, Judge.
Mary Lou Vidrine Fontenot[1] (Plaintiff) brought this action on a claim against the *586 Succession of Andre Vidrine based on a promissory note executed by Andre Vidrine in her favor. Plaintiff's petition was served upon Theolise Smith Vidrine, who was confirmed as the testamentary executrix of the succession.
The testamentary executrix answered plaintiff's petition and denied the allegations contained therein. The testamentary executrix then filed peremptory exceptions of prescription, no right of action, and no cause of action. Meanwhile, the other heirs of Andre Vidrine intervened in the succession proceedings and opposed plaintiff's claim.
Thereafter, plaintiff filed an amending and supplemental petition in which she alleged, in the alternative, that the note represented either a remunerative donation, or onerous donation, or a gratuitous donation.
The trial court rendered judgment against plaintiff and sustained the peremptory exceptions. Plaintiff was granted a suspensive appeal from that judgment. This Court, in Succession of Vidrine, 377 So.2d 564 (La.App. 3 Cir. 1979), reversed the trial court's judgment and remanded the case for trial on the merits.
The testamentary executrix and one of the intervenors then filed amending answers in which they plead that no consideration was given for the note sued upon, which constituted a bar to recovery by plaintiff.
A trial on the merits was held and the trial court rendered judgment against the plaintiff dismissing her action. Plaintiff was granted a devolutive appeal from the trial court's judgment.
Plaintiff presents the following issues for our resolution:
(1) Whether the trial court was manifestly erroneous in finding that no consideration had been given for the promissory note sued upon;
(2) If so, was the note delivered by the maker to the plaintiff, and
(3) Whether the note sued upon was a valid donation of any kind.

FACTS
Andre Vidrine executed a promissory note for the sum of $14,000.00 on September 19, 1968, and named plaintiff as the payee thereon. The terms of the note provide that it is due "at death", with interest at the rate of 6% per annum from October 1, 1968, until paid, together with 25% attorney's fees for collection.
Andre Vidrine died on March 18, 1978, and his widow, Theolise Smith Vidrine, filed a petition for probate of a nuncupative testament by public act. Andre Vidrine's testament was annexed to that petition.
Plaintiff instituted this action on May 24, 1978, alleging that the note was now due, payable and exigible, as the maker had died. She further alleged that amicable demand for payment had been made, but to no avail.
A trial on the merits of plaintiff's action was held on April 2, 1980. The trial court rendered judgment on August 15, 1980 against plaintiff and in favor of the defendant succession, dismissing plaintiff's action. Plaintiff was granted a devolutive appeal from that judgment.

LACK OF CONSIDERATION
Plaintiff contends that the trial court erred in finding that there was a failure of consideration for the note sued upon. Plaintiff argues that her father made the note in her favor because of the help she had given him around his farm during the time she lived there and after she got married.
The trial court found that plaintiff did only the regular and normal tasks that would be expected of a farm girl of a family of modest means and that there was a failure of consideration for the note.
The Louisiana Supreme Court, in Smith v. Louisiana Bank & Trust Company, 272 So.2d 678 (La.1973), noted the distinction between the defenses of "failure of consideration" and "want of consideration". Smith stated on page 683 that:

*587 "The defense of failure of consideration concedes that there was consideration for the instrument in its inception, but alleges that the consideration has wholly or partially ceased to exist. The defense of want of consideration, on the other hand, asserts that no consideration ever existed for the negotiable instrument."
Appellees asserted both of the defenses in their amending answers. We conclude that what the trial court really found was that there was a "want of consideration" rather than a "failure of consideration". Our conclusion is based on the reasons given by the trial court in its written opinion.
This Court, in Succession of Vidrine, supra, held that since the note was executed in 1968, this controversy is controlled by the "Negotiable Instruments Law", LSA-R.S. 7:1 et seq., rather than the "Commercial Laws", LSA-R.S. 10:1 et seq.
Plaintiff contends that there is a presumption that the note was issued for a valuable consideration.
Former LSA-R.S. 7:24 provided:
"§ 24. Presumption of consideration
Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."
See Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257 (1956); Smith v. Louisiana Bank & Trust Company, supra; Straughter v. Holy Temple of Church of God and Christ, 150 So.2d 124 (La.App. 4 Cir. 1963), writ denied, 151 So.2d 693 (La.1963).
However, if during the trial of the case the defendant offers evidence which casts doubt upon the reality or the amount of the consideration, the presumption that the note was given for value is rebutted, and the burden shifts to the plaintiff to prove consideration by a preponderance of the evidence. Bernard Brothers v. Dugas, supra; Smith v. Louisiana Bank & Trust Company, supra; Cleveland Construction Corporation v. Thibodeaux, 307 So.2d 785 (La.App. 3 Cir. 1975); Alexander v. Occhipinti, 251 So.2d 188 (La.App. 4 Cir. 1971); Laborde v. Dauzat, 158 So.2d 637 (La.App. 3 Cir. 1963), writ denied, 245 La. 731, 160 So.2d 595 (1964).
Theolise Smith Vidrine was married to Andre Vidrine at the time of his death. She testified that she and Andre Vidrine had two children and that plaintiff was one of them. Further, it was her testimony that plaintiff never did anything out of the ordinary in helping her father around the family farm. She stated that plaintiff attended school and would help out with the housework. She also testified that Andre Vidrine had quit farming at the time plaintiff was born and that there was no need for the heavy work which plaintiff claims to have done around the farm.
Dudley Vidrine, one of the children of Andre Vidrine born during his first marriage, testified that, at all times during which plaintiff claims to have performed extraordinary tasks, he lived no more than a quarter of a mile from his father's farm. Dudley stated that he farmed his father's land and, while he did this, he performed the heavy work around the farm, i. e., mending fences, plowing, etc. He stated that he never saw plaintiff perform any extraordinary tasks for her father, even though he could observe any activity taking place on his father's farm, while working in his own fields.
Harrison Smith testified on behalf of the defendant-succession. He is Theolise Smith Vidrine's son-in-law, as he married one of her daughters from her first marriage. He too testified that all he saw plaintiff doing around the farm was some housework and that she did attend school.
Defendants introduced a portion of a note written by plaintiff in which she asked for payment for having helped her mother take care of her father for a week and a-half. Plaintiff conceded that the note was written after she had purportedly received the note from her father. She explained her request for payment at that time by stating that she had doubts as to whether the note given her was valid and enforceable.
*588 We find that the evidence offered by the defendant was sufficient to rebut the presumption that the note sued upon was given for value. Therefore, the burden shifted to plaintiff to prove consideration by a preponderance of the evidence.
Plaintiff testified that she performed the following tasks around the farm: feeding the animals; baling hay; making fences around the farm; shucking and grinding corn; taking care of her father and mother; and splitting wood for her parents. It was her testimony that, after her marriage, she and her husband continued to perform different services for her parents. However, plaintiff's husband failed to testify at the trial of this matter. Plaintiff presented no other evidence of any consideration given by her for the note. Plaintiff gave contradictory testimony as to whether the note was given to her as a gift or as compensation for the services she had performed.
There was testimony to the effect, and the trial court opined, that Andre Vidrine made the note in favor of plaintiff because he was afraid that she would be unable to inherit anything from him, as she had been born before he had married her mother.
It is our opinion that the record establishes that the trial court's finding that there was a want of consideration for the note is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). Therefore, there is no need to address the issue of whether the note was actually delivered to plaintiff.

DONATION
Plaintiff has alleged, in the alternative, that the note was either a remunerative donation, an onerous donation, or a gratuitous donation. The written opinion of the trial court and its judgment reveal that the trial court apparently failed to consider these alternative pleas of plaintiff or found no merit whatsoever in them.
LSA-C.C. Article 1467 provides:
"Art. 1467. Methods of acquiring or disposing gratuitously
Art. 1467. Property can neither be acquired nor disposed of gratuitously, unless by donations inter vivos or mortis causa, made in the forms hereafter established."
LSA-C.C. Article 1468 provides:
Art. 1468. "Donation inter vivos, definition
Art. 1468. A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it."
LSA-C.C. Article 1469 provides:
"Art. 1469. Donation mortis causa, definition
Art. 1469. A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable."
There is no dispute with regard to the fact that the note cannot be considered a valid donation "mortis causa," as it is not in the proper form for such a donation. Further, on July 31, 1973, Andre Vidrine executed a "nuncupative testament by public act" in which he specifically revoked all prior wills. The note sued upon was executed on September 18, 1968. Therefore, plaintiff must prove that the note constitutes a valid donation "inter vivos" to recover. There are three kinds of donations "inter vivos": the donation purely gratuitous; the onerous donation, and the remunerative donation. See LSA-C.C. Article 1523.
Plaintiff first argues that the note constitutes either a remunerative donation or an onerous donation and that since these are not real donations, the rules peculiar to donations "inter vivos" are inapplicable.
A donation which is burdened with charges imposed on the donee is an onerous donation. A donation, the object of which is to recompense for services rendered, is a remunerative donation. See LSA-C.C. Article 1523.
LSA-C.C. Article 1526 provides:
*589 "Art. 1526. Onerous and remunerative donations, when rules applicable
Art. 1526. In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services."
The trial court, as noted above, found that plaintiff performed only the regular, normal tasks that would be expected of a farm girl of a family of modest means. The record clearly shows that the services performed by plaintiff, prior to the time that the note was executed, were nothing more than ordinary errands or chores that naturally arise from the parent-child relationship. Further, the record shows that she did no more after the note was executed. Plaintiff's testimony that she performed extraordinary tasks such as building fences and hoeing fields was contradicted by three other witnesses, including her own mother. Further, the evidence indicates that, up until the time that plaintiff left home at the age of 15, her father fully supported her and she was able to attend school. There was testimony to the effect that her father continued to provide her with some food after she was married and that he lent her and her husband money on different occasions.
We conclude that the record establishes that the trial court's finding that plaintiff performed only the regular, normal tasks of a farm girl of a family of modest means is not clearly wrong. Arceneaux v. Domingue, supra; Canter v. Koehring Company, supra.
Plaintiff contends that the note was given to her by her father to compensate her for services rendered to him. However, as noted above, the testimony of the other witnesses was to the effect that Andre Vidrine had made the note because of his mistaken belief that plaintiff would be unable to inherit from him. There was testimony from two witnesses that they were shown the note by plaintiff's father just a short time before his death. Plaintiff's mother testified that the note was in her husband's wallet when he died and that she later saw plaintiff remove the note from the wallet. It was plaintiff's testimony that she received the note just a few days after it was made by her father.
We need make no finding of fact concerning the contradictory testimony set out above. Assuming arguendo, that the note was given to plaintiff for services rendered both before and after the note was made, we find that the amount of the note, $14,000.00, far exceeds the value of the services plaintiff rendered to her father and that the value of the note exceeds by ½ the value of those services. See LSA-C.C. Articles 1525 and 1526; Succession of Pierson, 339 So.2d 1337 (La.App. 3 Cir. 1976), writ denied, 342 So.2d 216, 217 (La.1977). Therefore, this donation is subject to the rules peculiar to donations "inter vivos".
LSA-C.C. Article 1536 provides:
"Art. 1536. Donation of immovables or incorporeals, form required
Art. 1536. An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity." (Emphasis provided.)
The mode of proof of a donation "inter vivos" of an incorporeal movable, such as a promissory note, is prescribed by LSA-C.C. Article 1536. McLaughlin v. Knox, 224 So.2d 491 (La.App. 1 Cir. 1969); Houston v. McCoy, 351 So.2d 829 (La.App. 1 Cir. 1977). There is no authentic proof of the inter vivos donation of the note in the action before us and, therefore, the transaction is a nullity.
For the above and foregoing reasons, the judgment of the district court is affirmed.
All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] Mrs. Paul J. Fontenot was referred to as Mary Lou throughout these proceedings.