DUFRESNE, Judge.
This lawsuit involves the alleged sale of a house and property. The defendant, Warren James Elmer, seeks our review of a judgment of the trial court declaring the sale a simulation.
On June 17, 1977, Sadie Fortunato and her husband, Henry (now deceased) executed an Act of Sale transferring one half interest in the property and house located at 131 Athania Avenue in Metairie, to then-adopted daughter, Paula Elmer, and her husband, Warren Elmer. The Act of Sale recited $15,000.00 as consideration for the transfer. This house and property was acquired several years prior to 1970 by Henry and Sadie Fortunato during their marriage and they occupied this home as their matrimonial domicile.
During the early part of 1975, an agreement was reached between Warren and Paula Elmer and Henry and Sadie Fortuna- *1056 to that the Elmers would move in and live with the Fortunatos. Henry Fortunato was in poor health, was unable to work, and was not able to continue maintaining the residence on Athania Avenue. Therefore, it was his desire that his daughter, Paula, live in the Athania home to take care of her mother, in the event that he should become disabled or die. It was agreed that the Elmers would live in the residence rent free. However, it is unclear whether or not there was an agreement to transfer one half interest in the house for this purpose. In any event, on April 30, 1975, Warren and Paula Elmer sold their home so that they could move in with the Fortunatos. Although the house was in livable condition, it was in need of extensive repairs and renovations to accommodate two separate families. It was agreed that the Fortunatos would pay for materials necessary to renovate the downstairs area and Warren Elmer would furnish most of the labor, and on completion of the renovations downstairs, converting it to a self-contained apartment, the Fortunatos would move downstairs and Warren Elmer would begin work on the upstairs area where the Elmers would then reside.
After completing the downstairs, the El-mers moved into the upstairs area and completed the renovations. Warren Elmer had furnished almost all of the labor, working nights and on weekends to complete the renovation of the entire house.
On June 17, 1977, Mr. and Mrs. Fortuna-to transferred one half interest to the property to Warren and Paula Elmer. In 1980, the parties subdivided the property on Athania Avenue into two separate lots. Warren Elmer then began construction of a new building on the adjoining separate lot which was to be a playeare center. The cost of the materials were shared by the parties and Warren Elmer furnished almost all of the labor.
In September, 1981, Henry Fortunato died and shortly thereafter, Warren Elmer and his wife, Paula, separated and Warren moved out of the home. Subsequently, on June 9, 1982, Warren and Paula were divorced.
On March 9,1983, Mrs. Fortunato, one of the vendors, and Paula Elmer, one of the vendees, joined together as plaintiffs in a lawsuit seeking to annul the sale as a simulation. On the hearing on an exception, the trial judge dismissed the suit of Paula Elmer and suggested that she should be joined as a defendant in the suit; the court likewise dismissed all other causes of action by the plaintiff, Sadie Fortunato, except the action of a pure simulation. After trial, the trial judge, in its reasons for judgment, found that from the totality of the evidence, the sale executed on June 17, 1977, reciting a consideration of $15,000.00 was a pure simulation. The consideration was not paid, and the sale was a “naked formality” to induce Paula Elmer (their daughter) and her former husband, Warren Elmer, to join Sadie Fortunato and her aging and ill husband, in their home which they were to occupy rent free. The court further found that the improvements made by the defendant and his ex-wife were “primarily for their own convenience and benefit and directed towards the improved livability of that portion of the house. While these improvements did enhance the value of the house, they were not consideration for the alleged sale.”
The trial court further reasoned that the construction of the other building (playeare center) on the property, through the efforts and expenditure by the defendant, Warren Elmer does warrant a basis for recovery under defendant’s reconventional demand. In consideration of Warren Elmer’s contributions to both the main house as well as the additional building, he was entitled to a judgment in the amount of $15,000.00, which represents his one half interest in the enhanced value and improvements contributed to the real property by the then existing matrimonial community.
In appealing, the defendant, Warren Elmer, contends that the trial judge erred in his judgment and assigned the following errors for our review:
*1057 1) Did the trial court err in denying defendant’s motion for directed verdict and permitting plaintiff to reopen her case to summarily introduce portions of defendant’s deposition?
2) Did the trial court err in finding that the Act of Sale was a pure simulation and not a valid contract of any nature?
3) Did the district court err in refusing to allow defendant’s expert witness to testify as to the value of the materials and labor?
During the trial, Sadie and Paula both testified that the Elmers moved in the house to take care of her parents. Initially, during the presentation of plaintiff’s case, no evidence of non-payment of the recited $15,000.00 consideration was introduced into evidence. Consequently, at the close of plaintiff’s case, defendant moved for a directed verdict on the grounds that plaintiff had failed to prove by the preponderance of evidence of non-payment of the recited consideration. However, the trial court permitted plaintiff to reopen the case for the limited purpose of introducing the defendant’s deposition.
The record reflects that all parties admitted under oath, that no consideration was ever paid. Both Paula Elmer and Sadie Fortunato testified that there was never any money given in consideration of the transfer of the Athania Avenue property. The decision whether to reopen a party’s case for introduction of additional evidence after the requesting party has rested is within the sound discretion of the trial court and, unless there has been a showing of an abuse of the discretion, the trial judge’s decision will not be disturbed on appeal, Vitari v. Lewis, 361 So.2d 476 (La.App. 4th Cir.1978), Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970) also see LSA-C.C.P. art. 1631.
The issue presented here was whether the Act of Sale was a pure simulation. The defendant contends that it was not; ’ however, he urges that if the transfer was not a valid sale, it was a remunerative donation. The court concluded that the improvements made by Warren Elmer were for the convenience of the defendant and not consideration for the Act of Sale. It is well settled jurisprudence that a simulation is a sham or a pretended sale only clothed with the formalities of a valid sale. However, an authentic act transferring immovable property will not be set aside as a simulation if any consideration supports the transaction, because the legality of the transfer is thus established, Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959).
Our Supreme Court has clearly established the parameters of attacking simulated sales, in Owen v. Owen, the Supreme Court stated:
“... In our law, a simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations and disguised transfers. In a pure simulation, sometimes called a non-transfer, the parties only pretend to transfer the property from one to the other, in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed, which was that no transfer had in fact taken place. In a contest between a vendor and vendee in this situation, the true intent of the parties is effectuated and the courts hold that no transfer took place because the simulated sale is an absolute nullity. [Citations omitted]. The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but which is intended by the parties to be a gift rather than a sale. When this sort of simulation is attacked successfully, ... the true intent of the parties is likewise effectuated by the law. A valid transfer has taken place, but its form is a donation rather than a sale and the Code Articles on donations apply to the transfer”, 336 So.2d 782, 786 (La.1976).
The plaintiff asserts an “action en declaration de simulation” against the June 17, 1977 Act of Sale. In this lawsuit, Sadie Fortunato admits the act of conveyance of her one half interest in the Athania Avenue *1058 property to her daughter and ex-husband; however, plaintiff contends that the law shall presume the transaction a simulated sale because Sadie Fortunato retained both the usufruct and possession of the property. See LSA-C.C. art. 2480. Pursuant to Civil Code Article 2480, a legal presumption of simulation arises when the seller reserves a right of habitation and remains in possession of the property, Hysmith v. Coleson, 421 So.2d 402 (La.App. 1st Cir.1982), Camus v. Camus, 91 So.2d 120 (La.App.Orl.1956). In this matter, the property remained in the seller’s possession and presumably, the transfer is a legal sham and as a result, an absolute nullity, Hysmith v. Coleson, supra, Russell v. Culpepper, 344 So.2d 1372 (La.1977).
In order to rebutt the legal presumption, the purchaser must prove a good faith transaction resulting in a true alienation of ownership for consideration. In other words, before we shall hold the sale as simulated, we must ascertain whether the parties acted in good faith, whether there was an actual intention to transfer title, and whether any consideration was given for the transfer, Hysmith v. Coleson, supra, Russell v. Culpepper, supra.
We will not set aside a transaction if there is some evidence which would support that consideration was actually given. Here, however, we find that even though an authentic Act of Sale was passed to the defendant, the record is void of sufficient evidence which would substantiate the payment of any consideration.
There are admissions of all parties to this action which clearly show that no money was paid at the Act of Sale in question, this fact is further evidenced by the lack of any exhibit such as a cancelled check, money order, or receipt for the stipulated $15,000.00 specified as consideration paid in the Act of Sale. We note that in the record there exists several exhibits which admit the amount of money paid for repairs to the Athania Avenue property by the defendant, although there is an obvious absence of any exhibit for any money paid as consideration to the vendors. Sworn statements by defendant, Warren J. Elmer, in his deposition (admitted into evidence at trial) as well as his testimony of cross-examination verified that no money changed hands on June 17, 1977. The record further reflects that Sadie Fortunato still resides at the Athania Avenue property.
Defendant contends that the transfer, even though not a simulation, is a donation in disguise.. In consideration of this issue, we have analyzed the record and it establishes that this transfer was not a disguised donation. A remunerative donation is a donation or a gift, the object of which is to recompense or repay someone for services rendered. In order to have a remunerative donation, the value of the gift must not exceed by one half the value of the services rendered, Fontenot v. Estate of Vidrine, 401 So.2d 584 (La.App. 3rd Cir.1981), see also LSA-C.C. art. 1525. The record reveals that plaintiffs real estate expert, Jean Birdsong, appraised the Atha-nia Avenue property at $77,000.00 as of June, 1977. The defendant, Paula Elmer, testified that the cost of the materials to renovate the property was $7,029.00. In order that the transfer of property be considered a remunerative donation, the value of the services rendered would have to equal $38,500.00 (one half the value of the Athania Avenue property). Furthermore, the record is absent of any evidence that the transaction was intended to be a pure donation.
At the time of trial, Sadie Fortunato and Paula Elmer testified that there was no agreement either before or after the Act of Sale, that the transfer of one half interest in the Athania Avenue property to the El-mers was in compensation for Warren Elmer’s remodeling of the residence. Sadie Fortunato testified that her intent, as far as Warren Elmer was concerned, was to provide a rent free home for him as long as he was married to Paula and chose to live there.
The determination of whether there existed a valid remunerative donation is based in large part on the intention of the *1059 parties, which requires a determination of credibility of the witnesses. The defendant, Warren Elmer, has the burden of proving a remunerative donation, and he claims the intention of the Fortunatos was to make a remunerative donation to him. The trial court disagreed and we concur. In applying the rules of factual evaluation to the present case, we take particular note that the findings of fact by the trial court should be sustained where there is a reasonable evidentiary basis to support those findings. As to the threshold issue of whether the Fortunatos intended to repay Warren Elmer for his services provided, we are convinced that the parties did not intend a remunerative donation.
During the course of this trial, defendant, Warren Elmer, called an expert witness to estimate the value of the materials that had been used by him at the Athania Avenue property. Plaintiff stipulated that the witness was such an expert, however, objected to his testimony on the grounds that the construction had never been viewed by the expert witness, and thus the type of materials that had been used and/or the quality of the workmanship could not be based upon factual findings by the expert.
The trial judge decided that he was not going to give any weight to an expert witness who had not even seen the property about which he was to give an opinion as to the value of labor and materials from plans that had been drawn by the defendant. With respect to . the testimony of expert witnesses, the courts in this State will weigh their testimony in accordance with their qualifications and the relevant facts upon which their opinions are based, Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620 (La.App. 1st Cir.1977). We have stated in Williams v. Anderson, 456 So.2d 666 (La.App. 5th Cir.1984) that expert testimony is to be weighed by the trier fact in the same manner as other evidence.
“The trial judge is not bound by expert testimony. He may substitute his own common sense and judgment for that of an expert witness wherein the opinion of the trier of fact such substitution appears warranted by the testimony as a whole.”
William v. Anderson, supra at page 668.
Expert opinions are not mutually exclusive, rather they are generally regarded as advisory in character. Unlike testimony as to factual matters, an opinion seeks only to assist the trier of fact in its effort to determine the ultimate fact, State Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). The trial court, in no uncertain terms, refused to consider this expert’s testimony and concluded it was not of any weight when compared with other evidence and testimony. We conclude that the trial court did not commit error nor abuse its sound discretion here. This testimony would not be based upon facts which the court considered significant.
Considering the evidence presented, there was more than sufficient evidence for the trial court to conclude that the proposed sale was a simulation. We find no error in this conclusion.
Accordingly, for the foregoing reasons, we affirm the judgment appealed from. Appellant is to bear all costs.
AFFIRMED.